535 P.2d 3

**STATE of Arizona, Appellee,**

v.

**Donald Joseph ALLEN, Appellant.**

No. 2894.

Supreme Court of Arizona,
In Division.

May 15, 1975.
Rehearing Denied June 17, 1975.

Gary K. Nelson, Former Atty. Gen. by Thomas A. Jacobs, Teresa Thayer, Asst. Attys. Gen., Phoenix, for appellee.

Ed Bolding, Former Pima County Public Defender by Charles J. Babbitt, Asst. Public Defender, Tucson, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant, Donald Joseph Allen, was convicted by a jury of first degree burglary and sentenced to the Arizona State Prison for a term of ten to twelve years. He appeals. Affirmed.

At approximately 2:30 a. m. on May 24, 1973, appellant was seen by a patrolling officer of the Tucson police at a Union 76 service station located adjacent to the freeway in Tucson. Appellant was then wearing blue stretch stockings covering his hands and arms and was peering into the window of the service station. A screwdriver protruded from his back pocket. After appellant was taken into custody, a search of his person revealed that he had a twenty-dollar bill, fifteen ones, and four dollars and ninety-five cents in change, and the stretch stockings were found stuffed down the back of appellant's pants. A truck owned by appellant was found parked about 70 yards away. Appellant was later charged in the City Court of Tucson with possession of burglary tools and giving false information to the police. To both these charges he pleaded guilty.

At about 7:00 a. m. of the same day it was determined that an Atlantic Richfield Company service station, located north of the Union 76 station, had been burglarized. A piece of glass from a broken window at the Arco station had fabric weave prints of the kind made when glass is handled through fabric. A search of appellant's truck produced a glass fragment of the same density as the Arco window glass. A comparison of the pattern of appellant's shoe soles disclosed similarities with footprints found in the lube area of the Arco station. Appellant was charged with and convicted of the burglary of this station.

Appellant testified at his trial. On cross-examination the county attorney asked him whether he had been arrested at the Union 76 station for possession of burglary tools and giving false information to police officers and whether he had not entered pleas of guilty to both charges in the Tucson City Court, to which he answered, yes.

Appellant first argues that the circumstances surrounding his arrest at the Union 76 station were irrelevant to the charge of his burglary at the Arco station and the disclosure of the facts pertaining thereto prejudiced his opportunity for a fair trial. While this Court recognizes the traditional rule that a defendant cannot be impeached by a showing of specific acts of misconduct not amounting to a conviction for a felony, State v. Johnson, 94 Ariz. 303, 383 P.2d 862 (1963), we have held that an exception exists when:

"Evidence of other criminal acts is * * * so blended or connected with the crime of which the defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." State v. Villavicencio, 95 Ariz. 199, 201, 388 P.2d 245, 246 (1964).

The circumstances of appellant's arrest at the Union 76 station were closely related in time and location to the Arco burglary. The money he had in his possession was similar in quality to the money stolen from the Arco station. The circum-

stances of his arrest told the story of appellant's activities on the night of the burglary. As we said in State v. Byrd, 109 Ariz. 387, 509 P.2d 1034 (1973), in quoting from State v. Hernandez, 7 Ariz.App. 200, 202, 437 P.2d 952, 954 (1968):

> "* * * there are occasions when conduct of the defendant at other times than during the commission of the crime with which he is charged has direct probative value, and, when such is the case, the admission of such evidence is proper even though such conduct might be criminal in nature." 109 Ariz. at 389, 509 P.2d at 1036.

The "complete story" test establishes the relevancy of the events occurring at the Union 76 station.

■ Appellant's pleas of guilty thereafter to the misdemeanor charges were admissible as judicial confessions to corroborate the police officer's testimony as to what occurred that night, to establish criminal intent and to discredit appellant's professed innocence. There was no error in overruling the objection to the questions covering his pleas of guilty to the misdemeanor charges in the City Court of Tucson.

Appellant next argues that the trial court improperly admitted statements made by him to an investigating officer after he was arrested. Appellant urges that he was not fully apprised of his Miranda rights (Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966)) before being interrogated by the police officers. The record establishes that the arresting officer read appellant his rights from a card at the time of his arrest. Before being questioned at the jail, appellant was asked if he understood the rights of which he had previously been advised and whether he understood their meaning and that they were still available to him. Appellant answered in the affirmative. It is appellant's position now that the entire Miranda warnings should have been repeated to him before his interrogation at the Tucson jail

because he was being investigated for a different offense and several hours had elapsed since the initial warnings had been given.

■■ In State v. Miller, 110 Ariz. 597, 522 P.2d 23 (1974), we said:

> "This court has repeatedly held that once a defendant has been fully and fairly appraised of his rights, there is no requirement that the warnings be repeated each time the questioning is commenced." 110 Ariz. at 598, 522 P.2d at 24.

The test to be applied is whether the appellant was initially advised of his rights and *understood* them at the time of his interrogation. The record indicates that appellant was fully apprised of his rights when arrested and so far as the record discloses was aware of them when later questioned in jail.

■ Appellant urges that his truck was searched without his consent, leading to the discovery of a small fragment of glass which matched the density of the glass in the broken window at the Arco station. As to this, when appellant was first arrested, he denied having a vehicle. One of the arresting officers noticed an unlocked pickup truck parked about 70 yards away from the Union 76 station. The keys were still in the ignition. In attempting to learn who was the owner of this vehicle, the officer checked for the registration on both the visor and on the steering column. Neither contained the registration card as is required by law. See A.R.S. § 28–305(D). The officer then searched the vehicle and found a quantity of marijuana. Eventually a vehicle identity card which named appellant as its owner was found in the glove compartment. Appellant later admitted ownership of the truck and the police caused it to be impounded.

The next morning after the discovery of the burglary of the Arco station, appellant was asked to give his consent to another search of the truck for evidence of that

burglary. The interrogating officer told appellant that the police had already found the marijuana. Appellant agreed to the search. He now argues from Perkins v. Henderson, 418 F.2d 441 (5th Cir. 1969), that his consent was invalid since "a waiver cannot be valid unless the person knows that his permission may be freely and effectively withheld." It is appellant's contention that since the police had already searched his vehicle and had found marijuana, his refusal to give permission would not have been effective to prevent the search.

Perkins v. Henderson is clearly distinguishable. There, the morning following a burglary two uniformed police officers came to Perkins' home to question him concerning it. They were not armed with either an arrest or search warrant and, although Perkins was a suspect, there was not yet probable cause to support an arrest or search warrant. They asked permission of Perkins to search his car, but did not tell him that they would not make a search if he declined permission. The Court of Appeals found that Perkins' acquiescence in the search of his car did not amount to a voluntary and intelligent waiver of the right to be free from unreasonable searches and seizures.

In the present case, the situation is wholly different. Appellant had been arrested. There was ample grounds to sustain a prosecution for the burglary of the Arco station and ample grounds to obtain a search warrant for the further examination of his vehicle. And while the record does not reflect that the police advised him that he could refuse a further search, it is clear that had he refused, the refusal would have been ineffective to prevent the search under a lawfully obtained search warrant.

Finding no merit in the appellant's contentions on this appeal, the conviction and sentence are affirmed.

LOCKWOOD and HAYS, JJ., concur.