THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN PATTON, Defendant-Appellant.

Third District    No. 80-39

Opinion filed November 10, 1980.

Alfred L. Levinson, of Chicago, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin, Gerry R. Arnold, and Terry A. Mertel, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Peoria County denying defense motions to quash arrest and suppress evidence.

The defendant, Glenn Patton, had been indicted for the murder and attempted robbery of Gregory Sargent. His motions to quash arrest and suppress evidence were denied and he was convicted after a jury trial. He was sentenced to a term of 35 years for murder and 10 years for attempt (armed robbery).

On June 4, 1979, at 11:30 p.m., William Lininger, a tenant at the Greenbrier Apartments in Peoria, Illinois, went to his mailbox for his mail. Since it was a nice evening, Lininger went outside where he saw a Negro male in the parking lot who he thought was a fellow tenant, Gregory Sargent. When he approached this individual, Lininger realized that he did not know him. The witness Lininger saw him enter the apartment building and shortly thereafter observed two black men leave the building who walked around the area and then reentered the building. The witness Lininger next heard a loud noise and saw two black men run out of and away from the building. When he entered the building Lininger found Gregory Sargent lying in the hallway and bleeding.

After the police arrived Lininger was asked to look at the cars in the parking lot and point out any which did not belong there. He pointed out a brown Camaro which he had seen pull into the lot earlier. He had not seen the occupants.

The Camaro belonged to Mary Jamison, who was interviewed at her apartment on June 9, 1979. Jamison had loaned her car to her boyfriend, Gary Willingham, on June 4. He left at 10 p.m. and returned during the early morning hours of June 5. Jamison had found a nylon stocking in the car and had put it in the trunk. Before he died Sargent said he had been attacked by two men wearing nylon stockings on their heads. Jamison also said she had seen Willingham with a gun.

Jamison was taken to the police station for questioning. Willingham was found and brought in for questioning. He was arrested at noon on June 9, 1979, and after being advised of his constitutional rights, denied being at the Greenbrier Apartments on June 4. When told that the Camaro had been there, Willingham said he went there to see "Jim." When told that there was no "Jim," he then admitted being at the apartment when Sargent was shot. He heard a bump and a shot and saw Sargent bleeding in the hallway. He left the apartment and ran to Tracy Lorenz' house, where he told Betty Balestri what had happened. When interviewed, Betty Balestri said that after Willingham told her Sargent had been shot he told defendant and Tracy Lorenz. Defendant was taken to the police station for questioning on June 9. He denied involvement and was released. At 8 p.m. on June 10 the defendant was arrested because he didn't want to go to the police station for further questioning and that he had told a story that was in conflict with information related by Balestri. There is some disagreement between the State and counsel

for defendant as to whether the arrest was for the offense of murder or for the offense of obstructing justice.

At 9 p.m. on June 10, Willingham was again questioned. He stated that he went to Sargent's apartment with Thomas and the defendant to rob Sargent of some cocaine and that Thomas had a gun. There was a scuffle and Sargent was shot.

Defendant at approximately 11:10 p.m. on June 10 was formally told he was under arrest for murder, after which he was searched and advised of his constitutional rights and kept in an interview room. An oral statement was taken approximately 20 minutes later and a written statement was taken at 1:50 a.m. During questioning the defendant said that he wanted the prosecutor to know that he was cooperating. An assistant State's Attorney talked to him and told him that he knew defendant was cooperating but he made no deals. The defendant was not promised anything or threatened and he never asked for an attorney.

Defendant was indicted for murder, attempt (armed robbery), attempt (robbery). He moved to quash his arrest, suppress evidence and suppress his statements. The court denied all of these motions. The trial court found that there was probable cause for the arrest and that the confession was given voluntarily after defendant was fully advised of his constitutional rights. At the trial and during rebuttal argument the prosecutor told the jury that they need not consider all the circumstances regarding the taking of the confession and there was no objection to this statement by defendant. He did raise the issue in his post-trial motion but the same was not argued. Defendant was found guilty of all charges and was sentenced to 35 years of imprisonment for murder and 10 years of imprisonment for attempt (armed robbery). No judgment was entered for attempt (robbery).

A further recitation of facts will be set forth as they become pertinent to the resolution of the issues which the defendant has raised in this appeal.

On appeal the defendant argues that the trial court erred by denying his motion to quash arrest and suppress evidence, by failing to make an express finding of the facts relative to probable cause, by denying his motion to suppress confession, and by allowing the prosecutor to tell the jury that they need not consider all the circumstances in regard to the taking of his confession.

First, defendant argues that the trial court erred in denying his motion to quash arrest and suppress evidence. He insists that he was arrested twice, first on June 9 and again on June 10, 1979, that both arrests were without probable cause, and that his confessions were the result of those illegal arrests.

■■ We agree that the defendant was arrested on June 10, 1979, but we disagree with his contention that he was arrested on June 9. On this latter

date the record clearly discloses that the defendant and his girlfriend, Karyn Shay, voluntarily accompanied two police officers to the police station and that after he made a statement both he and his girlfriend were permitted to leave the station. Where a defendant is simply asked to accompany officers without threats or show of force there is no impermissible seizure of the individual. See *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870.

■■ We further agree with the trial court that there was sufficient probable cause to arrest the defendant on June 10 for the murder of Gregory Sargent. At the time of the defendant's arrest on June 10 the police knew that the defendant left Jamison's house with Willingham some two hours before the murder. They knew that he was Willingham's best and most trusted friend. The defendant had been at Betty Balestri's house the night of the murder for approximately one hour. He then left at the time of the murder and returned shortly before Willingham arrived at the house occupied by Tracy Lorenz and Betty Balestri. Furthermore, the police knew that the defendant was acquainted with the victim, had been to his apartment. The police also knew that he had lied to them about using the automobile of Tracy Lorenz to go to class the night of the shooting. All of these facts may have been insufficient to convict the defendant of the crime in question, but they were sufficient to convince a reasonable person that it was more likely than not defendant was involved in the murder of Gregory Sargent.

Assuming for purposes of argument that the police lacked probable cause to arrest the defendant for murder, they did have probable cause to arrest him for obstructing justice. A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly furnishes false information. Ill. Rev. Stat. 1979, ch. 38, par. 31—4(a).

The defendant had told the police that he had gone to class on the night in question and then returned home, where he watched television with his girlfriend and subsequently went to bed. On the other hand, the police had information from Betty Balestri that the defendant was present in the house occupied by her and Tracy Lorenz on the night of the shooting, shortly after that shooting. According to Betty Balestri, the defendant had been told by Gary Willingham the same exculpatory story that Willingham told her. Furthermore, the police had been informed that the defendant left the Jamison premises with Gary Willingham two hours before the shooting. Finally, the police had been informed that, contrary to a statement made by the defendant, he did not have the use of Tracy Lorenz' automobile on the night of the shooting.

These facts are more than sufficient to support an arrest for obstruct-

ing justice. If the defendant had actually heard an exculpatory story by Gary Willingham, his refusing to acknowledge that story obstructed the defense of Gary Willingham and violated the statute. On the other hand, there was strong evidence that Gary Willingham was involved in this crime as an active participant and that the defendant most probably had some knowledge of Willingham's participation. The defendant's false story and failure to acknowledge that he had such information certainly obstructed the prosecution of this case.

Next, defendant argues that the trial court erred in failing to make an express finding of fact relative to the existence of probable cause for his arrests. The Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(e)) requires that the trial court make a specific statement of his findings of fact and conclusions of law when granting or denying a motion to suppress evidence illegally seized. The State argues that the trial court did state specific facts and conclusions in its order, but even if the trial court had failed to make the required statement, its failure would not be grounds for reversal as long as the record sustains the order of the trial court. (*People v. Dickerson* (1979), 69 Ill. App. 3d 825, 387 N.E.2d 806.) We find no merit in this argument of the defendant, since the record discloses that the trial court made a 17-page findings of fact and that the law as applied to those facts resulted in a finding that there was probable cause for defendant's arrest. In short, the trial court stated facts which were adduced at the hearing, stated the test for determining probable cause, and then applied the law. We deem that the test as set forth in the case of *Dickerson* was more than amply met.

Third, the defendant presents a somewhat unique argument to the effect that the trial court committed error in denying his motion to suppress his confession in that the *Miranda* warnings given to him were in some way used as a police tool to coerce a confession from him rather than to inform him of his constitutional rights. He is apparently asserting that an "aura of officiality" exists when *Miranda* warnings are given which tends to coerce an accused to an extent that he confesses. This is a novel argument in that had the warnings not been given, he would be arguing that his constitutional rights had been denied.

■■ We find no merit in defendant's argument. The trial and sentencing of the defendant were later to disclose that at the time of the offense he was 22 years old. He was of native American birth, spoke and understood the English language. There is no indication that he had a low I.Q., but on the contrary, he obtained a G.E.D. certificate of education while in prison, where he took courses in data processing and computer programming. He further received some college credits from courses he successfully completed while in prison. At the time of the murder of Sargent he was enrolled in a real estate course at Bradley University. The defendant

was no stranger to the criminal justice system since he had two prior convictions in Michigan, one for armed robbery and one for burglary. Considering all these factors, we cannot agree with the defendant that the warnings so frightened or awed him to such an extent that they resulted in coercing him to confess. The defendant further complains that the officers read to him the *Miranda* warnings from a printed form rather than reciting them to him from memory. This complaint is so groundless that it need only be noted. It merits no consideration. He further complains that the warnings should have been repeated to him at each successive interview. Once an accused is advised of the *Miranda* warnings and acknowledges his understanding of them, the voluntariness of subsequent statements is not compromised by failure to repeat the warnings at each successive interview. (See *People v. Genus* (1979), 74 Ill. App. 3d 1002, 393 N.E.2d 1162, and *People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367, *cert. denied* (1968), 392 U.S. 936, 20 L. Ed. 2d 1394, 88 S. Ct. 2305.) The defendant's complaints regarding the *Miranda* warnings can only be classified as being based upon desperation, rather than legal grounds, and hence are of no merit.

Lastly, the defendant argues that the trial court erred in allowing the prosecutor, during rebuttal, to argue that the jury need not consider all the circumstances of the taking of defendant's statement. The State argues that this issue was raised in defendant's post-trial motion, but no argument was presented. No objection was made at trial.

The prosecutor told the jury they should not determine whether the Peoria police had complied with the requirements of the *Miranda* decision. Both the defendant and the State agree that the proper warnings were given. Defendant objects to the method by which the warnings were given.

■■ The general rule in Illinois is that failure to raise an issue in the trial court operates as a waiver of that issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, even if the issue had not been waived on appeal, it could not be concluded that the prosecutor's statement constituted error. The question of the competency of a confession or whether the defendant waived his *Miranda* rights is one of law to be determined by the court. (See *People v. Creach* (1979), 69 Ill. App. 3d 874, 387 N.E.2d 762; *People v. Medina* (1978), 71 Ill. 2d 254, 375 N.E.2d 78; and *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) The complained-of statement was as follows:

> "And Miranda was complied with and [y]ou are not even to consider that. That is not your job to determine whether Miranda was complied with. You won't be instructed on that."

We find no error in this statement. It was made in response to defense counsel's argument that the police officers never explained the *Miranda*

warnings and that there was no showing that the defendant understood the warnings or waived them. Such an argument invited the prosecutor's comments. The comments of the prosecutor did not mistate the law and did not advise the jury that they were not to consider the credibility of the confession or the weight to be given to their duties concerning the defendant's statement.

For the reasons stated above, the judgment of the Circuit Court of Peoria County is hereby affirmed.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.