Michael E. ROBERTS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–82.

Supreme Court of Wyoming.

Dec. 31, 1985.

Leonard D. Munker, State Public Defender, Cheyenne, and Martin J. McClain, Appellate Counsel, argued, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John R. Renneisen and Mary B. Guthrie, argued, Sr. Asst. Attys. Gen., for appellee.

Before THOMAS, C.J., and ROONEY,* BROWN and CARDINE, JJ., and RAPER, J., Retired.

* Retired November 30, 1985.

CARDINE, Justice.

Appellant Michael Roberts was convicted of resisting arrest in a jury trial in county court. His conviction was affirmed by the district court. The primary issue for our consideration is whether a conviction under our resisting arrest statute can be upheld when the arresting officer unwittingly relies upon an invalid warrant in making the arrest. We affirm.

On the morning of October 31, 1983, Officer Glen Wright of the Sheridan police department investigated a traffic accident involving appellant. Officer Wright issued a citation for appellant's failure to yield the right-of-way at a stop sign. Later that day, after running a computer check on appellant's license and discovering that appellant had been driving without insurance and with a suspended license, Officer Wright again stopped appellant and issued two more citations. All of the citations required appellant to appear at the county court on Monday, November 7 at 10:00 a.m. Apparently Officer Wright confused his days and dates because traffic court was normally held on Tuesday rather than Monday mornings.

It is not clear from the record whether appellant strictly complied with the erroneous court date. The county court clerk testified at trial that she was not in the vacant courtroom at 10:00 a.m. and had no way of knowing whether appellant appeared. Appellant testified that he appeared on the date and time set, but the courtroom door was locked; he then reported to the clerk's office at 10:15 a.m. The clerk stated that he came to her office at 11:30 a.m., not 10:15 a.m. In any event, the clerk told appellant to come back the next day, Tuesday, November 8th.

It is undisputed that appellant failed to appear on November 8th, the rescheduled day. The clerk notified the county court commissioner of appellant's nonappearance, and the commissioner ordered the clerk to prepare a bench warrant which contained the following grounds for appellant's apprehension:

"[I]t appeared to the Court that the said Michael Earl Roberts did unlawfully violate his promise to appear before the Sheridan County Court on the 7th day of November, 1983, and was informed to reappear on the 8th day of November, 1983, before Traffic Court to enter a plea to those certain traffic citations issued by G.R. Wright on the 31st day of October, 1983 * * *."

The clerk also prepared an affidavit in support of the bench warrant, but it appears that the affidavit was not actually presented to the commissioner before he signed the warrant. She prepared the affidavit because she "needed it in writing for a backup in case there were any repercussions from this."

The bench warrant was issued to the sheriff's office and passed along to the dispatcher at the police department. On November 16, while on routine patrol, Officer Wright observed appellant unloading concrete from the back of a pickup truck. He asked appellant to come to the sheriff's office to take care of the citations and to explain his failure to appear. When appellant refused, Officer Wright informed him that he could arrest him pursuant to the bench warrant that had been issued. This seemed to have no impact on appellant. Officer Wright then approached the pickup and grabbed appellant who reacted by putting the officer in a choke hold. Officer Wright escaped by spraying appellant with mace and was then able to return to his patrol car to radio for backup. Appellant, however, was not through. He came to the patrol car, struck the officer in the face, and wrestled him to the ground. Again using mace, Officer Wright escaped and, with the help of a passerby, took appellant into custody.

An information was filed charging appellant under § 6-5-204(a), W.S.1977 (June 1983 Replacement) which states:

"A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or

interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties."

In every stage of this proceeding, from pretrial motions through his appeal to this court, appellant has maintained that he had a right to use reasonable force to resist the arrest which he claims was illegal because it was based upon an invalid warrant. Appellant framed his argument in terms of the resisting arrest statute. He contends that a peace officer is not *"engaged in the lawful performance of his official duties"* (emphasis added) when making an illegal arrest.

Appellant has raised an additional point which was closely related to his primary defense. He tried to show at trial that Officer Wright failed to inform him of either the existence of the warrant or the reason for arrest. According to appellant, that failure caused the arrest to be illegal under Rule 4, W.R.Cr.P. and he, therefore, had the right to resist this illegal arrest.

The jury found appellant guilty of resisting arrest, whereupon the court sentenced him to the maximum penalties provided by the statute, i.e. one year in jail and a $1,000 fine. The judgment and sentence were affirmed on appeal by the district court.

## THE RIGHT TO RESIST AN ARREST WHICH IS BASED UPON AN INVALID WARRANT

█ It is possible, under the instructions given by the trial court, that the jury arrived at a guilty verdict even though it found that the warrant was not based upon probable cause and that the arrest was illegal.[1] The jury was instructed:

"[I]t is not the officer's duty to investigate the procedure which led to the issuance of the order or warrant for arrest. He is entitled to and can rely on the warrant. His duty is to make the arrest. He need not pass judgment on the judicial act,"

and:

"A peace officer making an arrest pursuant to an invalid warrant is justified in the use of any force which he would be justified in using if the warrant were valid, unless he knows that such warrant is invalid."

█ We cannot assume that the jury followed one particular route in reaching a decision on an essential element of the crime when two routes were clearly available and there was some evidence making each route a plausible choice. This is especially true when we have only a general verdict as a guide to the jury's reasoning. *Fife v. State*, Wyo., 676 P.2d 565, 568 (1984). We can affirm only if we find that both routes were permissible, in other words, only if the jury was properly instructed that an officer can be engaged in the lawful performance of his official duties even when executing an invalid arrest warrant.[2]

---

1. An arrest is of course illegal if the warrant upon which it is based is issued without probable cause. Rule 4(a), W.R.Cr.P.; Amendment IV, United States Constitution; *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

A bench warrant, like any other warrant, must be based upon probable cause that an offense has been committed and the named person committed it. Normally there is no question that probable cause exists for a bench warrant because a person's nonappearance is obvious to the court. *United States v. Evans,* 574 F.2d 352, 355 (6th Cir.1978). In this case, however, the clerk did not have any personal knowledge that appellant failed to appear at 10:00 a.m. on November 7 as required. And, although there is no question that appellant did not appear on November 8, there is some doubt

as to whether a warrant should have been issued for that nonappearance since the November 8 setting was not memorialized by a written citation or summons. Rule 44(f), W.R.Cr.P. C.C., provides that "[t]he county court shall issue a warrant of arrest for any defendant who fails to appear when summoned or who fails to appear as provided in the citation."

2. The district court affirmed on the ground that the warrant was valid and the arrest, therefore, legal. As we said in the body of this opinion, an appellate court should not affirm a jury verdict on one permissible ground when it is possible that the jury reached that verdict through a different, impermissible route. The proper role for the district court sitting on appeal was to determine the propriety of the jury instructions given by the trial court.

■ Appellant argues that the trial court's instructions were contrary to the law and that they led the jury to ignore the impropriety of the bench warrant. He contends that the common law of resisting arrest still applies in Wyoming to permit a person to resist an arrest still applies in Wyoming to permit a person to resist an arrest which is based upon an invalid warrant. We disagree. The crime of resisting arrest is defined by § 6-5-204(a), W.S.1977 (June 1983 Replacement). Before a person can be convicted under this statute, the prosecution must prove beyond a reasonable doubt that the resistance occurred while the peace officer was "engaged in the lawful performance of his official duties." One of a peace officer's official duties is found in § 7-2-102(a)(ii), W.S. 1977, which authorizes an officer to "arrest a person when: * * * [h]e has reasonable grounds for believing that a warrant for the person's arrest has been issued in this state or in another jurisdiction." The execution of an invalid warrant is not excepted from a peace officer's official duty under § 7-2-102(a)(ii), supra, as it would be if the legislature had so intended. A peace officer, therefore, is lawfully performing his official duty when he makes an arrest even if it later appears that the arrest warrant is invalid. A person who resists such an arrest can be convicted under our resisting arrest statute. The jury instructions given by the trial court accurately reflected the law, and it was proper for the jury to ignore the alleged invalidity of the arrest warrant. Appellant's proffered instructions are clearly contrary to the law and were properly refused. *Simms v. State*, Wyo., 492 P.2d 516, 523 (1972).

Our holding in this case is supported by reason as well as by statute. It would be unfair to give the peace officers of this state the authority to make warranted arrests but deny them the protection of the resisting arrest statute. *State v. Wright*, 1 N.C.App. 479, 162 S.E.2d 56, 62 (1968). This unfairness would not be balanced by any legitimate gain by the persons arrested. Few, if any, of them have any idea at the time of their arrest that the warrant executed by the arresting officer might be invalid. Their later assertion of the privilege to resist is simply a post-hoc justification. We agree with what the Maryland Court of Special Appeals said in a case which is on all fours with this one:

"In the case at bar, neither the appellant nor the police officers saw the warrant before the arrest. Clearly, the appellant did not resist the arrest because he believed the warrant was defective. To permit his conviction to turn upon whether in hindsight the warrant is adjudicated defective, a highly complex procedure in itself, when he could not have known it was defective is to permit an uninformed street decision by an accused to take the place of a decision by the appointed and informed adjudicative officers of the law. Such a procedure cannot be sanctioned at the cost of violent injury to police officers fulfilling the command of a warrant." *Rodgers v. State*, 32 Md.App. 90, 359 A.2d 122, 126 (1976).

■ Even if the person arrested is absolutely certain that his arrest is a mistake, he should nevertheless cooperate with the arresting officer and employ remedies available through the judicial system. While these remedies may be little consolation in some overburdened jurisdictions, we think they are viable in Wyoming. See P. Chevigneny, The Right to Resist and Unlawful Arrest, 78 Yale Law Journal 1128, 1133–1136 (1969). Rule 5, W.R.Cr.P., requires that the arrested person be taken before a commissioner without unnecessary delay. The commissioner is required to inform him of "the general circumstances under which he may secure pretrial release." Rule 8(c), W.R.Cr.P. makes release upon bail mandatory for noncapital offenses unless the judicial officer determines that "such release will not reasonably insure the appearance of the person as required."

After the person arrested has been admitted to bail, the most onerous aspect of a mistaken arrest is behind him, and he can take up the issue of damages in a civil suit against the complainant. We note that the

civil dockets in Wyoming courts are sufficiently current to give the damage remedy vitality.

An additional remedy is made available by the exclusionary rule. Any evidence acquired through the illegal arrest is inadmissible against the defendant at trial. United States ex rel. *Kilheffer v. Plowfield*, 409 F.Supp. 677, 680–681 (E.D.Penn. 1976), citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

As a practical matter, the person arrested has little to gain by resisting arrest.

"Vesting an arrestee with the right to resist quite clearly invites the police to respond with force and frequently the violence would entail the use of deadly weapons, a circumstance that ought never be encouraged." *United States ex rel. Kilheffer v. Plowfield*, supra, 409 F.Supp. at 681.

And, there can be no doubt that the police are usually the ones that come out on top in such confrontations. The fact that appellant suffered only temporary disability from Officer Wright's mace is more a tribute to Officer Wright's self-control than it is a reason to permit such physical confrontations to continue undeterred.

Considering the solid arguments against the common law rule, it is not surprising that the trend is away from allowing resistance to illegal arrests. 1 W. LaFave, Search and Seizure § 1.11 at 211 (West 1978). The Model Penal Code provides that the "use of force is not justifiable * * * to resist an arrest which the actor knows is being made by a peace officer, although the arrest in unlawful." Model Penal Code § 3.04 (Tentative Draft No. 8 1958) quoted in 1 W. LaFave, supra, § 1.11 at 211–212. Similarly, the Uniform Arrest Act, first proposed by the Interstate Commission on Crime in 1941, requires a person who has reasonable grounds to believe that he is being arrested by a peace officer "to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest." S. Warner, The Uniform Arrest Act, 28 Va.L.Rev. 315, 345 (1941). Many state courts have recently moved away from the common law position although some have not yet adopted a blanket view that all illegal arrests cannot be resisted. See 1 W. LaFave, supra, § 1.11 at 212, n. 8 (1978); and 44 A.L.R.3d 1078, 1087, for a listing of the states that have departed from the common law rule.

■ This case represents a limited departure from the common law view because we only decide that a citizen cannot resist an arrest by a uniformed police officer who is executing a warrant. In cases where unlawful warrantless arrests or unlawful searches and seizures are resisted, § 7–2–102(a)(ii), W.S.1977, is not available to determine whether the searching or arresting officer is "engaged in the lawful performance of his official duties." [3]

There may be situations in which police activity is so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties. In such cases, the resisters cannot be prosecuted under our resisting arrest statute. But this is not one of those cases. Appellant was arrested by a uniformed police officer who tried several times to make a peaceful, low-key arrest. The officer informed appellant of the existence of the warrant and of the violation upon which the warrant was based. Appellant's resistance was fully punishable under the statute.

It is worth noting that there are no constitutional ramifications to our interpretation of the resisting arrest statute. While the United States Supreme Court held in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), that evidence seized incident to an illegal arrest must be suppressed, the Court has never held that

---

**3.** The privilege to resist an unlawful search has not been established in this state despite some language to that effect in *Storms v. State*, Wyo., 590 P.2d 1321, 1323 (1979). The statement in *Storms* was merely dictum. See *Simmons v. State*, Wyo., —— P.2d —— n. —— (1985) (No. 85–57, decided ——).

the arrestee has a constitutional right to resist such an arrest. 1 W. LaFave, supra, § 1.11 at 212–213. The federal courts that have decided the issue have held that:

> "[A]t least absent unusual circumstances there exists no such federal constitutional right." *United States, ex rel. Kilheffer v. Plowfield,* supra, 409 F.Supp. at 680 (citing *United States ex rel. Horelick v. Criminal Court of City of New York,* 366 F.Supp. 1140 (S.D.N.Y.1973) rev'd on other grounds, 507 F.2d 37 (2nd Cir.1974)).

The many state courts which have eliminated the right to resist an unlawful arrest have, of course, assumed that the common law rule has no constitutional dimensions.

## INSTRUCTION NO. 4

There is one additional argument presented by appellant which is closely related to his primary contention. Appellant claims that his arrest was illegal not only because the warrant was invalid, but also because Officer Wright failed to contemporaneously inform him of the existence of the warrant and the grounds for arrest. Appellant contends that because the arrest was illegally carried out, the officer was not "engaged in the lawful performance of his official duties."

Instruction No. 4 was in conflict with this defense. The jury was instructed

> "that an officer need not have the warrant of arrest in his possession when making an arrest but that he is required to inform the person of the existence of the warrant and the reason for his arrest when reasonably possible under the circumstances. *However, the failure to inform the Defendant of the purpose for the arrest does not invalidate the arrest.*" (Emphasis added.)

We agree with appellant that the last sentence of this instruction constituted an incorrect statement of the law, but we think the error was harmless.

When county courts issue an arrest warrant, it is to be served, "in accordance with Rule 4, W.R.Cr.P." Rule 4(a), W.R.Cr.P. C.C. Rule 4 states that

> "[i]f the officer does not have the warrant in his possession at the time of the arrest, he shall then inform the defendant of the offense. charged and of the fact that a warrant has been issued."

The first portion of Instruction 4 essentially tracks Rule 4. The last sentence of the instruction, however, negates the requirement that the officer inform the arrestee of the offense charged.

There is no Wyoming authority on whether this last part of the instruction was erroneous. There have been several federal cases, however, under Rule 4, F.R. Cr.P. which are helpful in interpreting the similar Wyoming rule. In *United States v. Smith,* 468 F.2d 381 (3rd Cir.1972), an arrest by federal agents was attacked as illegal because the agents told the arrestee that the warrant was a "failure to appear" warrant when in fact it was a "fugitive bench" warrant. The court held that this mistake did not invalidate the arrest because

> "a police officer in a chase should not be required to immediately say with particularity the exact grounds on which he is exercising his authority." Id. at 383.

 While we agree with *United States v. Smith* that a misstatement of the reasons for arrest will not invalidate the arrest, we do not think that a total failure to inform the arrestee can be overlooked. Rule 4 says that the officer *shall* inform the defendant of the offense charged if he does not have the warrant available to show the defendant. The rule recognizes that people ought to know why they are being arrested. If the warrant is not available to support the arrest, then the officer should at least give the reason orally; and, if he fails to do so, the arrest should be invalid for at least some purposes.[4]

---

**4.** We are not saying that an officer must necessarily inform the accused of the reasons for arrest before the actual physical apprehension. Under some circumstances it would be reasonable for the officer to give the information after taking actual custody. *Hinton v. Sims,* 171 Miss. 741, 158 So. 141, 143 (1934).

Of course an invalid arrest cannot protect the defendant from every consequence of that arrest. It is well established, for instance, that

"[t]he fact that an original arrest may have been unlawful does not affect the jurisdiction of the court, nor is it a ground for quashing the information. And it does not preclude trial of the accused for the offense." 5 Am.Jur.2d Arrest § 116."

The consequence which the arrestee seeks to avoid must be weighed against the flaw which rendered the arrest illegal. For example, we held in the first part of this opinion that an arrest rendered illegal by a faulty warrant will not justify resistance to that arrest. On the other hand, we also pointed out that some illegal arrests are so provocative that resistance would be justified.

When an officer makes an arrest without presenting a warrant to the arrestee and without telling the arrestee the reasons for the arrest, the arrestee's resistance is far more understandable than it would be if the only flaw were in the issuance of the warrant. Under these circumstances, the arrest might be invalid. Moreover, when executing an arrest that is invalid for this reason, an officer might be outside the ambit of his official duties and the arrestee could not be prosecuted under our resisting arrest statute. Instruction No. 4 misstated the law.

Our inquiry does not end with our conclusion that the last sentence in Instruction 4 was erroneous. "Errors in instructions not injurious or prejudicial are not cause for reversal, and the appellant has the burden of showing harmful error." *Mainville v. State*, Wyo., 607 P.2d 339, 343 (1980). In fact, even instructional error of constitutional dimensions may be ignored in some cases. The United States Supreme Court recently stated in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 976, 74 L.Ed.2d 823 (1983):

"[I]n light of *Chapman* [*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] these cases cannot be read for the broad proposition that instructional error of constitutional dimensions may *never* be harmless." (Emphasis in original.)

■ After reviewing the record in this case, we are convinced that the erroneous final sentence in Instruction 4 was harmless beyond all possible doubt. There was absolutely no evidence that Officer Wright failed to inform appellant of the offense charged or the existence of an outstanding warrant. Officer Wright testified that he informed appellant that a bench warrant was outstanding based upon appellant's failure to appear. He stated:

"I advised him that the Sheriff's office had a warrant for his arrest for failure to appear on the traffic citations, and I told him he would have to come with me to the Sheriff's office."

A friend of appellant's who witnessed the arrest testified as follows:

"Q. What did Mr. Wright say?
"A. Mr. Wright then advised him that there was in fact a bench warrant out for his arrest.
"Q. You heard him say bench warrant?
"A. Um-hmm.
"Q. Did he tell him what for?
"A. I gather it was for those tickets.
"Q. Did you hear him say that?
"A. For failure to appear in court I guess is what he stated."

Finally, appellant himself testified that he had been informed of the existence of the bench warrant.

"A. And I think Officer Wright then said that the bench—that there was a bench warrant down at the Sheriff's Department for my arrest.
"Q. Did he tell you what it was?
"A. No.
"Q. Do you have an idea what you were being arrested for?
"A. After he had asked me about failing to appear, I had an idea."

It is well established that

"[a]n appellant is entitled to instructions which cover his theory of the case if the offered instructions are sufficient to in-

form the court of such theory and only if there is competent evidence in the record to support them." *Patterson v. State*, Wyo., 682 P.2d 1049, 1050 (1984).

Given the total absence of evidence that the arrest was illegally performed, we would have had no difficulty affirming the trial court if it had refused an instruction offered by appellant on that issue. The fact that the court did give an instruction on that issue,. an instruction which misstated the law, did not make that issue any more relevant.

"[A] rule of per se reversal for instructional error does not apply to situations in which an erroneous instruction was given but where the evidence was insufficient to support the giving of such instruction. Under such circumstances, the key question is whether the giving of the inapplicable instruction was likely to mislead the jury." *People v. Prantil*, 169 Cal.App.3d 592, 215 Cal.Rptr. 372, 383 (1985).

Appellant's argument was defective in its factual premise because, upon the evidence, the jury could not have found that the arrest was improperly conducted. This being so, the erroneous instruction was harmless.

Affirmed.