Joseph Newton BEST,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–83.

Supreme Court of Wyoming.

May 8, 1987.

Leonard D. Munker, State Public Defender; Julie D. Naylor, Appellate Counsel; Gerald Gallivan and John D. Whitaker, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

This appeal, taken from a conviction of attempted first degree murder, presents two issues for review and resolution. The first claim of error is that statements obtained during custodial interrogation should have been suppressed because of the refusal to furnish counsel to the accused upon request. The second claim of error is that the trial court improperly denied requested instructions on the defendant's theory of the case which was self-defense. We hold that the trial court correctly concluded that there had been a valid waiver of the right to counsel prior to the inculpatory statements, and the evidence submitted does not support the claimed theory of self-defense. The judgment and sentence is affirmed.

Joseph Best, in his attempt to gain reversal of a life sentence for attempted first degree murder, articulates the issues in his appeal in this way:

"1. Whether the refusal to provide a lawyer after one is requested during custodial interrogation should prohibit the use at trial of any statement taken as a result of such interrogation.

"2. Whether a defendant has an affirmative right to have the jury instructed as to his theory of the case when his theory is demonstrated by competent evidence at trial."

While obviously identifying the same issues, the State of Wyoming, in its brief, states them as follows:

"1. Did the trial court err in admitting appellant's statements, since appellant never invoked his right to counsel before voluntarily talking to the officers?

"2. Did the trial court err in refusing appellant's instructions regarding self-defense, since there was no competent evidence to support such instructions?"

On a Saturday evening, Joseph Best shot Wyoming Highway Patrolman Lawrence Szabo twice. It was a fortuity that the highway patrolman was not fatally wounded or did not die from the wounds inflicted. This shooting took place when the highway patrolman finally succeeded in stopping Best after a high-speed chase which was initiated on an interstate highway when the patrolman attempted to stop Best for speeding. In attempting to escape from the officer, Best drove onto a county road and, ultimately, he was stopped by the efforts of the officer and because of a blown-out tire when he attempted to return to the interstate highway after turning around and successfully driving past the highway patrol vehicle.

Best succeeded in avoiding apprehension and, in the vicinity, stole a pickup truck which he drove to Colorado. The next day he was arrested at a motel in Colorado, and subsequently, he was interviewed by Colorado law enforcement officers. It was at this time that the inculpatory statements, which Best seeks to have suppressed, were obtained. The following day, Monday, a criminal complaint was filed charging Best with attempted first degree murder in violation of §§ 6-2-101 and 6-1-301, W.S. 1977, as amended. Section 6-2-101, W.S. 1977, proscribes the offense of first degree murder and provides for punishment of

"death or life imprisonment according to law." Section 6-1-301, W.S.1977, proscribes attempts to commit crimes, and § 6-1-304, W.S.1977, provides that the penalty for attempt is the same as the penalty for the crime itself except that the death penalty cannot be imposed if the capital crime actually is not committed.

Following extradition from Colorado to Wyoming, Best was tried by a jury for the charged offense of attempted first degree murder. He was found guilty by verdict of the jury, and the judgment and sentence imposed a sentence of life imprisonment. Best now appeals from that judgment and sentence.

■ In pursuing his claim that the inculpatory statements should have been suppressed, Best invokes both the Fifth and Sixth Amendments to the United States Constitution and Art. 1, §§ 10 and 11 of the Wyoming Constitution. The critical interrogation occurred prior to the filing of criminal charges against Best, and for that reason, his rights under the Sixth Amendment to the United States Constitution and the parallel provision, Art. 1, § 10 of the Wyoming Constitution, which also affords the right to counsel, are not implicated. A request for counsel made prior to the commencement of adversarial criminal proceedings does not invoke the right to counsel under the Sixth Amendment to the United States Constitution. *Brown v. State,* Wyo., 661 P.2d 1024 (1983). The same result must pertain under Art. 1, § 10 of the Wyoming Constitution. This view is consistent with that of the Supreme Court of the United States. *Michigan v. Jackson,* — U.S. —, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, *reh. denied* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977); and the cases cited in *Brown v. State,* supra.

■ There is a significant difference between the requirements that counsel be made available under the Fifth Amendment to the United States Constitution and the Sixth Amendment to the United States Constitution and the parallel provisions of Art. 1, §§ 11 and 10 of the Wyoming Con-

stitution. The right to counsel under the Sixth Amendment of the United States Constitution and Art. 1, § 10 of the Wyoming Constitution is not dependent upon any request. *Michigan v. Jackson,* supra; *Brewer v. Williams,* supra; *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). It is automatic and may only be withdrawn by an express waiver by the accused. See *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Williams v. State,* Wyo., 655 P.2d 273 (1982). If the right to counsel in accordance with the Fifth Amendment to the United States Constitution and the parallel provision of Art. 1, § 11 of the Wyoming Constitution is an issue, however, it is dependent upon a specific request for counsel by the accused. *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

■ The only constitutional claim that Best can make is an infringement of his right not to be compelled to be a witness against himself or testify against himself in any criminal case in violation of the Fifth Amendment to the United States Constitution and Art. 1, § 11 of the Wyoming Constitution. Our court is committed to the protection of that right, and following the requirements of the Supreme Court of the United States as enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh. denied* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966), we require appropriate advice with respect to that right including the right to counsel in order to secure the privilege. *Dryden v. State,* Wyo., 535 P.2d 483 (1975). No further interrogation is permitted after a person in custody has invoked the right to counsel until counsel has been made available or that person voluntarily initiates further communication indicating a desire to waive that right. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh. denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981); *Cheatham v. State,* Wyo., 719 P.2d 612 (1986); *Daniel v. State,* Wyo., 644 P.2d 172 (1982); *Dryden v. State, supra.* In *Smith v. Illinois, supra,* 469 U.S. at 95, 105 S.Ct. at 493, the Supreme Court of the United States discussed

what it described as the " 'rigid' prophylactic rule," of *Edwards v. Arizona, supra,* and set out a tandem analysis:

" * * * First, courts must determine whether the accused actually invoked his right to counsel. See, e.g., *Edwards v. Arizona, supra,* 451 U.S., at 484–485, 101 S.Ct., at 1884–1885 (whether accused 'expressed his desire' for, or 'clearly asserted' his right to, the assistance of counsel); *Miranda v. Arizona,* 384 U.S., at 444–445, 86 S.Ct., at 1612 (whether accused 'indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking'). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona, supra,* 451 U.S., at 485, 486, n. 9, 101 S.Ct., at 1885, n. 9."

This is substantially the approach this court adopted in *Cheatham v. State, supra.* The difference between *Smith v. Illinois, supra,* and *Cheatham v. State, supra,* is the difference between an express and equivocal or ambiguous request for counsel.

The district court in this case, in accordance with *Mayer v. State,* Wyo., 618 P.2d 127 (1980), and *Dodge v. State,* Wyo., 562 P.2d 303 (1977), held a suppression hearing with respect to the statements made by Best. The court then concluded that Best did not invoke his right to counsel, and the statements were made voluntarily. The critical facts are encompassed in the transcript of the dialogue between Best and the interrogating officer in Colorado. In the significant part, that transcript reads:

"MR. BOCK: I'm a peace officer, but before you're asked any questions by a peace officer about crimes involving aggravated assault, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in Court. You have the right to talk with a lawyer before you are questioned and have him present with you during any questioning. If you want a lawyer but you cannot afford to hire a lawyer, a lawyer will be appointed by the court to represent you before you are questioned and be with you during the questioning. If you decide to start answering questions, you'll also have the right to stop answering questions, and also the right to talk to a lawyer at any time. So, if you want to talk to me and some time you say, hey, I don't think I want to talk to you any more, you can quit.

"MR. BEST: I know.

"MR. BOCK: So, it says, 'I've read this statement of my rights, I understand what my rights are.' Then you sign here. Then we go down to the bottom. I understand what my rights are, I know what I am doing. I agree to answer questions. I do not want a lawyer at this time. By signing this, you still don't waive that right if you decide at some point to stop. So, if you're interested, we need you to sign those two spots.

"MR. BEST: Do you have a lawyer available?

"MR. BOCK: No.

"MR. BEST: You don't?

"MR. BOCK: No.

"MR. BEST: What do you want me to answer questions about?"

This case is not substantially distinguishable from *Cheatham v. State, supra.* Giving Best the benefit of any doubt, this dialogue at most disclosed an equivocal or ambiguous request for counsel. In *Cheatham v. State,* supra, we quoted from *Daniel v. State,* supra, in which this court espoused the proposition that an interrogating officer may seek clarification of the suspect's desire concerning the presence of counsel when confronted with a comment that may constitute an equivocal or ambiguous request for counsel. When that situation occurs, the officer is foreclosed from discussing the circumstances relating to the offense, but he is permitted to engage in further dialogue to resolve the question of the suspect's desire for counsel. Once that has been resolved by all of the circumstances, including the voluntary execution

of a written waiver of the right to counsel, the interrogation may proceed. While the balance of the transcript discloses a good deal of fencing by Best, ultimately, he did execute a written waiver of his right to counsel. The circumstances disclose a voluntary waiver of his constitutional rights, including the right to counsel evaluated according to the requirement articulated in *Frias v. State*, Wyo., 722 P.2d 135 (1986). Only then did Best furnish the inculpatory statements which he sought to have suppressed. The dialogue which occurred prior to that time did not seek information about the attempt to kill the highway patrolman nor was it in any way a subterfuge infringing upon the voluntariness of Best's waiver. In most respects, it could be fairly described as a refusal by Officer Bock to discuss the events in Wyoming with Best in the absence of a waiver by Best of his constitutional rights. In arriving at our holding that the trial court properly refused to suppress these statements, we have taken into account the thrust of the cases cited in *Cheatham v. State, supra,* and in addition *Hampel v. State*, Alaska App., 706 P.2d 1173 (1985); *Hall v. State*, 255 Ga. 267, 336 S.E.2d 812 (1985); *Sechrest v. State*, 101 Nev. 360, 705 P.2d 626 (1985); *State v. Smith*, 34 Wash.App. 405, 661 P.2d 1001 (1983); *United States v. Fouche*, 776 F.2d 1398 (9th Cir.1985).

■ We hold that Best waived his rights afforded by these constitutional provisions by signing a written waiver with full awareness of the rights which he was relinquishing and the consequences of that relinquishment. The waiver was not the product of intimidation, coercion or deception but was a free and deliberate choice in light of all the circumstances. Best was sarcastic and flippant in relating his version of the shooting of the highway patrolman, but he explained his view to the interrogating officers. He had been subjected to custodial interrogation on other occasions, and when Officer Bock orally explained his constitutional right not to be compelled to furnish information, Best replied "I know." The totality of the circumstances supports our determination. At the very most, his question concerning the availability of an attorney was an equivocal request for counsel, and in the light of what followed, it did not affect the validity of his subsequent waiver. The admission of his statements at trial did not violate his rights under either the Fifth Amendment to the United States Constitution or Art. 1, § 11 of the Wyoming Constitution.

In arguing his right to instructions with respect to his theory of self-defense, Best relies not only upon the general law of self-defense, but in addition, he presents the concept of imperfect self-defense relying upon such cases as *People v. Flannel*, 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (1979); and *Mullis v. State*, 196 Ga. 569, 27 S.E.2d 91 (1943). We first address Best's right to an instruction on self-defense, before treating with his argument concerning imperfect self-defense.

■ We have developed two requirements relating to a right to defense instructions on theory of the case in criminal prosecutions. It is incumbent upon the defendant to offer an instruction which is sufficient to apprise the court of his theory of the case. *Sanchez v. State*, Wyo., 694 P.2d 726 (1985); *Stapleman v. State*, Wyo., 680 P.2d 73 (1984); *Goodman v. State*, Wyo., 573 P.2d 400 (1977) aff'd on appeal after remand, Wyo., 601 P.2d 178 (1979); *Benson v. State*, Wyo., 571 P.2d 595 (1977); *Thomas v. State*, Wyo., 562 P.2d 1287 (1977); *Blakely v. State*, Wyo., 474 P.2d 127 (1970); *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119 (1947). Even if an offered instruction is sufficient to apprise the court of the defendant's theory of the case, that theory still must be supported by competent evidence. *Sanchez v. State, supra; Stapleman v. State, supra; Naugher v. State*, Wyo., 685 P.2d 37 (1984); *Jackson v. State*, Wyo., 624 P.2d 751, cert. denied 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981); *Goodman v. State, supra; Thomas v. State, supra; Blakely v. State, supra; State v. Hickenbottom, supra.* When these conditions are satisfied, due process requires the trial court to give a correct instruction to the jury encompassing the defendant's theory of the case. *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981);

*Goodman v. State, supra; Blakely v. State, supra; Benson v. State, supra.*

▓ In this instance, the first requirement was satisfied because Best, through his counsel, offered a series of instructions encompassing the theory of self-defense. If there was sufficient evidence to justify instruction on this theory, then the failure to give the instruction would justify reversal. *Stapleman v. State, supra,* 680 P.2d at 75; *Blakely v. State, supra,* 474 P.2d at 127; *State v. Hickenbottom, supra,* 178 P.2d at 131. Any competent evidence is sufficient for that purpose even if it consists only of testimony of the defendant. *Garcia v. State,* Wyo., 667 P.2d 1148 (1983); *Goodman v. State, supra.*

The only evidence in that regard is found in Best's testimony. That testimony discloses that, when he noticed a highway patrol officer attempting to pull him over, he accelerated and engaged in a high-speed chase with the officer. His several attempts to elude the officer were unsuccessful, and at one point, he even drove his car head-on at the officer's patrol car. To avoid a collision, Best swerved around the patrol car and continued back up the dirt road to the interstate. During the part of the chase that occurred on the dirt road, Best armed himself with a pistol which he had in his car because he believed that the officer was attempting to shoot out his tire. Ultimately, Best had to stop because of a blown-out tire which made his vehicle difficult to control. He said he hoped to return to the interstate because he felt that harm might come to him from the officer if he were still on the dirt road.

When the two vehicles came to a stop near the on ramp to the interstate, both the highway patrolman and Best got out of their cars with Best slightly ahead of the officer. Best took a quick look at the officer and then turned away focusing his view on his blown-out left tire. He then heard a car door slam and looked back to see the officer strike the hood of the patrol car with what he thought was a lead pipe but which he admitted had to be the officer's police baton. Best said the officer then stated "OK, asshole, bend over and spread them," and Best did not reply. The officer then said something further which Best understood to be "Wait until I get my hands on you," and at that point Best began walking away because he was afraid the officer would "rough him up." Best testified that, at this time, he had no intention of defending himself nor of using the gun which earlier he had placed in the waistband of his pants during the chase. When the officer continued to approach Best with his right hand near his hip and with an attitude as though he were "going to ask for a driver's license," Best continued to walk away. The officer then said something further which Best understood to be "Get your ass over here or you've had it." At that point, Best again glanced over his shoulder and saw something in the officer's right hand which he thought was a gun pointing at him. He then grabbed the gun from his trousers and turned around, firing at the officer in a random manner.

▓ When an individual is confronted by a uniformed police officer attempting to effect an arrest, any act of self-defense also amounts to resisting arrest. In such a situation, a claim of self-defense is circumscribed by what we said in *Roberts v. State,* Wyo., 711 P.2d 1131, 1135 (1985):

"There may be situations in which police activity is so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties."

If that situation is present, the law permits a person to use such force as he reasonably believes necessary to protect himself against excessive force by the officer which might be considered a separate assault. *State v. Holley,* Fla., 480 So.2d 94 (1985); *State v. Thomas,* Mo., 625 S.W.2d 115 (1981); *State v. Castle,* 48 Or.App. 15, 616 P.2d 510 (1980); *State v. Eckman,* 9 Wash.App. 905, 515 P.2d 837 (1973); Annot., 77 A.L.R.3d, § 2 at 284–286. In the absence of a controlling statute, the common law right of self-defense governs the right of the individual in such circumstances.

In *Patterson v. State*, Wyo., 682 P.2d 1049, 1053 (1984), we outlined the common law requirements for self-defense in a homicide case as follows:

"* * * (1) [T]hat the slayer was not at fault in bringing on the difficulty; (2) that he believed, at the time of the killing, that he was in such immediate danger of losing his own life, or of receiving serious bodily injury, as made it necessary to take the life of his assailant; (3) that the circumstances were such to warrant reasonable grounds for such belief in the mind of a reasonable man; (4) that there was no other reasonable method of escaping or otherwise resolving the conflict."

In so doing, we relied upon the composite of the Wyoming cases dealing with self-defense which were cited in *Garcia v. State*, supra.

■ It is against this legal standard that we must evaluate the evidence in this record in testing its sufficiency to support the claimed right to an instruction on self-defense. In accordance with our cases, we take the view of this testimony which is most favorable to Best. We note in passing that a good deal of what he claimed in his testimony was controverted by the statements which he had made to the interrogating officers in Colorado. In addition, Best's testimony clearly was contrary to that of the officer, and while Best made the claims, his testimony in many respects appears to be specious, fantastic, and certainly the product of fabrication. Nevertheless, we must determine whether his testimony satisfies the factors outlined in Patterson. That testimony offers reasonable support for only the second factor relating to Best's subjective belief. Subjective belief alone is not sufficient to invoke self-defense nor justify an instruction on that theory. *Patterson v. State, supra; Garcia v. State, supra; Leeper v. State*, Wyo., 589 P.2d 379 (1979).

■ Giving Best's testimony the most favorable interpretation, nothing he said indicated that he was not at fault in bringing on the difficulty. His efforts to elude the officer which covered more than 30

miles on the road and some 30 minutes in time do not in any way relieve him from fault in bringing on the difficulty. He testified that he believed shots were fired at his car, but the evidence is uncontroverted that no shots had been fired from the patrolman's pistol. The officer's strong language and the rapping of the hood of his patrol car with his baton are not evidence of excessive force which would result in the conclusion that he was creating a situation justifying Best in shooting him.

None of the evidence reflects circumstances which would warrant a reasonable man in concluding that there were reasonable grounds for belief that he was in immediate danger of losing his own life or receiving serious bodily injury. We return to our point that it was Best's duty not to resist arrest, and there is nothing in these circumstances which would indicate that the highway patrolman was doing anything more than attempting to effect an arrest. Finally, there was no evidence which indicated that there was no other reasonable way of resolving the conflict. All Best had to do was surrender. His subjective belief as to the danger of that course of conduct does not justify his conduct. As this court said in *Garcia v. State, supra*, 667 P.2d at 1152:

"* * * While the appellant may want to believe that those circumstances constitute self-defense, the law should not justify him in this aberrant style of thinking."

Best argues that he attempted to resolve the conflict by withdrawing from the officer attempting to "place distance" between the officer and himself. Retreat is not the same as withdrawal. "A 'withdrawal' is an abandonment of the struggle and such abandonment must be perceived or made known to the adversary." *State v. Nunn*, Mo.App., 697 S.W.2d 244, 247 (1985). Best's conduct was entirely consistent with his previous attempts to avoid arrest and elude the officer. The Supreme Court of Arizona appropriately stated the matter in this way:

"* * * Appellant did not call out or indicate by any physical act that he wished

to be taken out peacefully. Appellant testified that he was afraid and understandably so; but in the absence of any facts constituting a withdrawal appellant was not justified in using force against the officers. Had the defense presented evidence satisfying all of the elements of A.R.S. § 13–404, even if this evidence was in complete conflict with the state's evidence, appellant would have been entitled to an instruction on self-defense." (Citations omitted.) *State v. Williams,* 132 Ariz. 153, 644 P.2d 889, 892 (1982).

■ This leaves only the contention of Best that he was entitled to have presented to the jury his theory of imperfect self-defense. As Best explains that concept, he argues that since malice is an element of the offense of first degree murder, his subjective belief that the highway patrolman was about to shoot him manifests the absence of malice even though he was mistaken. His claim is encompassed in Instruction G which he offered and which reads as follows:

"A person who uses deadly force against another person [peace officer] in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury acts unlawfully, but does not harbor malice aforethought and cannot be found guilty of [either] attempted [first or second degree] murder. This would be so even though a reasonable man in the same situation seeing and knowing the same facts would not have had the same belief. Such an honest but unreasonable belief is not a defense to the crimes of attempted voluntary manslaughter or aggravated assault and battery."

We agree completely with the refusal of the district court to give this instruction.

Even a superficial analysis demonstrates that this argumentative statement is nothing more than a request for a directed verdict on the offense of attempted first degree murder because it would tell the jury that Best could not harbor malice. The title of the theory, "imperfect self-defense," is in itself intriguing. It is difficult to discern whether the adjective describes the legal theory or those courts which have been sufficiently gullible to swallow this proposition and reiterate it for a jury. The instructions which the trial court gave in this case were more than sufficient to permit Best to argue that the element of malice was not present, and he was not entitled to the presentation of that argument by the court in the form of this instruction.

There is no reversible error manifested in the record in this case. The judgment and sentence of the trial court is affirmed.

URBIGKIT, Justice, specially concurring.

I generally concur with the court's opinion, and specifically concur in affirming the conviction, but separately disagree with the majority's determination that the custodial interrogation was not part of adversarial criminal proceedings under Art. 1, § 10 of the Wyoming Constitution, by which the right to counsel is guaranteed.

The majority assert that because the critical interrogation occurred prior to the filing of criminal charges against Best, his rights under the Sixth Amendment to the United States Constitution and the parallel provision, Art. 1, § 10 of the Wyoming Constitution, which also affords the right to counsel, are not implicated. The majority elect to address this issue despite the fact that appellant did not present it. Rather, appellant argued that under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh. denied* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966), and its Fifth Amendment guarantees, he had requested that he be represented by counsel. It is improper for this court to seek to determine constitutional rights not presented to this court for review. Consequently, the majority's discussion of Art. 1, § 10 of the Wyoming Constitution is mere dicta.[1]

1. The shooting occurred early evening, Saturday, February 23. Appellant was arrested about 2:00 Sunday afternoon in Colorado, after which the initial interrogation occurred. On Monday, a criminal complaint was filed in the County Court, Carbon County, and a warrant for arrest was issued. On Wednesday, counsel was appointed in Rawlins for him, but appellant's actu-

The majority do not question the right to counsel after arrest, but would only afford that right under Art. 1, § 11 (parallel to the Fifth Amendment to the United States Constitution) and not Art. 1 § 10 (parallel to the federal Sixth Amendment) of the Wyoming Constitution which provides the specific right to counsel.

The inconclusive decisions of the United States Supreme Court which attempt to define and differentiate the right to counsel under the Sixth Amendment of the United States Constitution from the right to counsel under the Fifth Amendment of the United States Constitution and *Miranda v. Arizona, supra,* do not provide a logical or adequate legal justification to incorporate that erratic dichotomy into the right-to-counsel Art. 1, § 10 and self-incrimination, Art. 1, § 11 provisions of the Wyoming Constitution. See *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The challenge and the state Constitution-emplaced justification are thoughtfully considered in the editorial comment in a law review article authored by Justice Brennan, *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights,* 61 N.Y.Univ.L. Rev. 535 (1986). See also *Charpentier v. State,* Wyo., 736 P.2d 724 (1987), Urbigkit, J., dissenting.

Although it is dicta, the majority's discussion of Art. 1, § 10 compels me to respond. The case the majority cite as precedent to support the ruling that the right to counsel except for *Miranda* accrues only at arraignment and not at arrest is *Brown v. State,* Wyo., 661 P.2d 1024 (1983). In that case the questioned interrogation occurred *before Brown had been arrested:* "Appellant was not under arrest when he asked to consult with an attorney." *Brown v. State, supra,* at 1029.

In the federal case on which the majority rely, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, *reh. denied* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977), the conviction was reversed for unacceptable *post-arraignment interrogation* after arrest. In *Michigan v. Jackson,* — U.S. —, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the court also found post-arraignment interrogation unacceptable and reversed the conviction. None of these cases is direct authority to deny the right to counsel upon arrest under the provisions of the *Wyoming* Constitution. It is not difficult to distinguish these cases, nor is it difficult to recognize that adversarial criminal proceedings are commenced when a defendant is arrested.

The extent to which an arrest initiates adversarial criminal proceedings is underscored by our prior decision that an individual is not entitled to resist arrest. *Roberts v. State,* Wyo., 711 P.2d 1131 (1985). If there is no right to resist an arrest, then certainly the constitutional protections applicable to the commencement of adversarial proceedings should apply.

I would follow the persuasive reasoning of Justice Douglas in his special concurrence in *Coleman v. Alabama,* 399 U.S. 1, 14–17, 90 S.Ct. 1999, 2006–2008, 26 L.Ed.2d 387 (1970):

" * * * A 'criminal prosecution' certainly does not start only when the trial starts. If the commencement of the trial were the start of the 'criminal prosecution' in the constitutional sense, then indigents would likely go to trial without effective representation by counsel. * * *

"If we are to adhere to the mandate of the Constitution and not give it merely that meaning which appeals to the personal tastes of those who from time to time sit here, we should read its terms in light of the realities of what 'criminal prosecutions' truly mean.

"I was impressed with the need for that kind of strict construction on experiences in my various Russian journeys. In that nation detention incommunicado is the

al return following extradition did not occur until April 26. At that time, the interrogating officers in Colorado did not communicate that the highway patrolman was still alive and

would consequently be available as a trial witness. What Best said might have been more restrained had he known.

common practice, and the period of permissible detention now extends for nine months. Where there is custodial interrogation, it is clear that the critical stage of the trial takes place long before the courtroom formalities commence. That is apparent to one who attends criminal trials in Russia. Those that I viewed never put in issue the question of guilt; guilt was an issue resolved in the inner precincts of a prison under questioning by the police. The courtroom trial concerned only the issue of punishment.

"Custodial interrogation is in practice—here and in other nations—so critical that we would give 'criminal prosecutions' as used in the Sixth Amendment a strained and narrow meaning if we held that it did not include that phase. My brother Harlan in his dissent in *Miranda v. Arizona*, 384 U.S. 436, 513, 86 S.Ct. 1602, 1648, 16 L.Ed.2d 694, called the Sixth Amendment cases cited by the majority of the Court the 'linchpins' of the ruling that an accused under custodial interrogation was entitled to the assistance of counsel. They were properly such, although the main emphasis in the *Miranda* opinion was on the use of custodial interrogation to exact incriminating statements against the commands of the Fourteenth and Fifth Amendments. Like the preliminary hearing in the present case, custodial interrogation is obviously part of the 'criminal prosecution' that the Sixth Amendment honors—if strict construction is our guide."

I would hold that the right to counsel attaches upon arrest, and the Wyoming Constitution requires that an arrested defendant be provided counsel upon request. In concurring with the decision of the court that the equivocal request did not require termination of the interrogation or the immediate right to see counsel on a Sunday afternoon, see, however, *State v. Mailo*, Hawaii, 731 P.2d 1264 (1987), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh. denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), I do not accept the denial or denigration of the intrinsic right to counsel under both Art. 1,

§ 10 and Art. 1, § 11 of the Wyoming Constitution.