**Alan James SULIBER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 92–248.

Supreme Court of Wyoming.

Dec. 30, 1993.

Leonard D. Munker, State Public Defender, and Deborah Cornia, Appellate Counsel (argued), for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen. (argued), for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Alan James Suliber appeals from his conviction for the murder of his stepson, seven year-old Adam Franklin. Appellant asserts that the trial court erred by admitting prior bad acts testimony and by admitting appellant's statements to the police which were given after he made an equivocal request for counsel. Appellant also challenges the sufficiency of the evidence to sustain the second degree murder conviction.

We affirm.

Appellant raises the following issues:

ISSUE I

Did the trial court err in allowing the introduction of evidence concerning the character and prior bad acts of the appellant?

ISSUE II

Did the admission of appellant's statements to the police after an equivocal request for counsel violate appellant's rights under the Fifth Amendment of the United States Constitution and Article One, Section 11 of the Wyoming Constitution?

ISSUE III

Was there sufficient evidence to support the conviction of second degree murder?

### FACTS

This tragic tale begins in March of 1991 when Katie Franklin (Franklin) and her then six year-old son, Adam Franklin (Adam), moved to Rock Springs, Wyoming. Franklin went to work for the Rock Springs post office, where she met a customer, Alan Suliber (appellant). They began dating shortly thereafter, and a serious relationship quickly developed between the two. They were married in October of 1991.

Throughout the time they were married, Franklin noticed various injuries to Adam. These included scratches, bruises and blisters. There was also an incident in July of 1991, which occurred prior to the marriage, where appellant slapped Adam so hard that he left a bruise on Adam's face in the shape of a hand. These injuries were also noticed by several other persons at various times.

On February 13, 1992, Franklin drove her son and appellant to a boy scout meeting. She then went to her job at the post office, where she worked from 5:00 pm to 3:30 am. Meanwhile, appellant and Adam attended the scout meeting; and after it was over, they walked to a friend's house to get a ride home. The friend, however, was not home, so appellant and Adam began to walk home. After they had walked awhile, a passerby stopped and gave them a ride. They arrived home around 6:30 p.m. that night.

Adam went to bed that night around 8:00 p.m., and appellant testified that he went to bed around 10:00 p.m. Franklin arrived home from work around 4:00 a.m. the morning of February 14. She turned on the tele-

vision and read the mail for about ten min-
utes. She noticed that appellant was not
sleeping on the couch or in his art room.
She thought it was unusual because he usual-
ly did that when she worked late. After
Franklin went to bed, she remembered that
she had not kissed Adam goodnight, which
was her habit. Appellant awoke, held her
tight, and told her not to worry about it; it
was not important.

The next morning, Franklin was awakened
by appellant who said that something was
wrong with Adam. She ran down to Adam's
room where she found him lying on his back
on the floor next to his bunk bed. Adam was
not breathing, and his skin felt cool. Frank-
lin immediately attempted to resuscitate
Adam by performing CPR.

Appellant called 911, and an ambulance
was sent to the scene. The EMTs attempted
to revive the boy, but they were unsuccess-
ful; and Adam was declared dead by a doctor
at the hospital emergency room. Both the
EMTs and the doctor noticed bruising on
Adam that was inconsistent with any type of
accidental death. They also noticed other
bruises on his body, including on his but-
tocks. An autopsy subsequently confirmed
that Adam died from injuries that were the
result of a beating with a blunt object.

Appellant was charged with second degree
murder in the beating death of Adam Frank-
lin. A jury convicted appellant, and he was
sentenced to life in prison. He now appeals
that conviction.

### DISCUSSION

#### A. W.R.E. 404(b)

Appellant challenges the admissibility
of prior bad acts testimony by the State's
witnesses. These witnesses testified about
the relationship between appellant and
Adam. Several of those witnesses testified
about the July 1991 slapping incident and the
resulting bruise on Adam's face. Three of
the witnesses testified about instances of
emotional abuse, such as when appellant
bathed Adam and soap was in Adam's hair,
and appellant told Adam not to open his eyes
or they would burn, then watched Adam walk

around the house for several hours and eat a
meal with his eyes closed.

Appellant claims that this testimo-
ny was irrelevant and constituted an improp-
er attack on his character. He points out
that the testimony was elicited during the
prosecutor's case-in-chief; and he argues, as
a consequence, it was used to show he had
the propensity to commit the crime charged.
Appellant further asserts that the testimony
was not admissible to show identity under
W.R.E. 404(b) because the acts testified to
were not peculiar or unique enough to show a
personal "signature." Finally, appellant
complains that the admission of this testimo-
ny violated W.R.E. 403 because it put him on
trial for who he was, not for the crime
charged.

W.R.E. 404(b) provides:

(b) *Other crimes, wrongs, or acts.*—Evi-
dence of other crimes, wrongs, or acts is
not admissible to prove the character of a
person in order to show that he acted in
conformity therewith. It may, however, be
admissible for other purposes, such as
proof of motive, opportunity, intent, prepa-
ration, plan, knowledge, identity, or ab-
sence of mistake or accident.

In reviewing Rule 404(b) evidence, we give
great deference to the trial court's determi-
nation of admissibility. *Longfellow v. State,*
803 P.2d 848, 851 (Wyo.1990). We will not
find abuse of discretion as long as there is a
legitimate basis for the court's decision.
*Pino v. State,* 849 P.2d 716, 719 (Wyo.1993);
*Pena v. State,* 780 P.2d 316, 318 (Wyo.1989).
The trial court's discretion does have some
limits, and to that end we have established a
five-part test to determine the admissibility
of evidence under Rule 404(b). The five
factors to be considered are:

1. The extent to which the prosecution
plainly, clearly, and convincingly can prove
the other similar crimes.

2. The remoteness in time of those
crimes from the charged offense.

3. The extent to which the evidence of
other crimes is introduced for a purpose
sanctioned by W.R.E. 404(b).

4. The extent to which the element of the charged offense, that the evidence is introduced to prove, is actually at issue.

5. The extent to which the prosecution has a substantial need for the probative value of the evidence of the other crimes.

*Longfellow,* at 851; *Bishop v. State,* 687 P.2d 242, 246 (Wyo.1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). Not all five of these factors need to be satisfied for 404(b) evidence to be admissible. *Longfellow,* at 851; *Pena,* at 318. Usually, however, when 404(b) evidence has been properly admitted, all five factors will be found. *Longfellow,* at 851. Finally, the probative value of the evidence must outweigh any unfair prejudice or confusion of the issues as a result of its admission. W.R.E. 403; *Wehr v. State,* 841 P.2d 104, 109 (Wyo. 1992).

■ The determination of whether prior bad acts testimony is admissible under W.R.E. 404(b) necessarily includes the determination of relevancy. *Coleman v. State,* 741 P.2d 99, 103 (Wyo.1987). Thus the question of relevancy is considered at the same time the admissibility of the evidence under Rule 404(b) is determined. *Longfellow,* at 850 n. 2.

The State offered the evidence as probative of intent, identity and malice. At trial there was no dispute that Adam was beaten to death; according to the defense's opening statement to the jury, the only question was who did it. The night of Adam's death only two people had been with him—Franklin and appellant. The defense theory was that Franklin had beaten her son to death as stated in his closing argument. Therefore, the identity of Adam's killer was a critical issue in dispute at trial.

This case is very similar to what occurred in *Longfellow.* There the question was whether the mother or her boyfriend beat a baby to death. We held that prior bad acts evidence which showed the mother had abused her other child was admissible to prove intent and identity. *Longfellow,* at 853–54. The evidence in this case, as in *Longfellow,* was needed by the prosecution to establish whether appellant or Franklin beat Adam to death. *Id.* The testimony of the prior bad acts was circumstantial evidence from which the identity of Adam's killer could be inferred. *Barnes v. State,* 858 P.2d 522, 532 (Wyo.1993).

Also, the evidence was relevant as proof of intent. As we pointed out in *Longfellow,* even though second degree murder is a general intent crime, the prosecution must still prove that the defendant undertook the prohibited conduct voluntarily. *Longfellow,* at 853; *see also Crozier v. State,* 723 P.2d 42, 52 (Wyo.1986). Appellant denied committing the act at all, thus intent was at issue at trial.

■ Finally, the evidence was admissible to establish malice. Appellant was charged with second degree murder. In order to establish that charge, the prosecution must prove:

1) appellant

2) purposely ***and maliciously***

3) without premeditation

4) killed Adam Franklin

W.S. 6–2–104. The jury was also instructed on manslaughter as a lesser included offense. Malice is not an element of manslaughter. W.S. 6–2–105. Whether a person acted maliciously (second degree murder) or in the "sudden heat of passion" (voluntary manslaughter) is a question for the jury. *Smith v. State,* 564 P.2d 1194, 1197–98 (Wyo.1977). Thus the question of malice was in dispute at the trial. The prior bad acts evidence was admissible as evidence from which malice could be inferred.

Having found the third and fourth factors of the *Bishop* test present, we conclude that the first, second and fifth factors are present also. The prosecution "plainly, clearly, and convincingly" proved the acts through witnesses who saw the acts or observed their effects. All of the acts testified to occurred within a year of appellant being charged with murdering Adam, which is sufficiently close in time. *See Pena,* at 319 (acts seven years before charged offense not too remote). The circumstantial nature of the prosecution's case and the existence of two suspects gave the prosecution a substantial need for the evidence. *See Longfellow,* at 854. Thus all five of the factors have been met in this case.

The decision under Rule 403 of whether the probative value of the evidence is outweighed by unfair prejudice or confusion is within the trial court's discretion. *Wehr*, at 109. The evidence was substantially probative of identity and malice. The trial court did not abuse its discretion.

## B. REQUEST FOR COUNSEL

■ Appellant was interviewed four times by the police. The first two were at the hospital immediately following the victim's death. The third was at the police station on the same day. The fourth was also at the station, but it took place on the following day, February 15.

Appellant does not challenge the propriety of the first three interviews, only the fourth one. At the start of the fourth interview, the police showed appellant a rights-waiver form and asked him to sign it. A police officer testified that the following then occurred:

> [defense attorney] No. Right after you asked him about it [the waiver form], did he not say, "Do I need a lawyer"?
>
> [officer] Yes, sir.
>
> [defense attorney] And then he's told he's not under arrest. It's a continuation of questioning, and then he goes ahead and signs off, but he asked if he needed a lawyer?
>
> [officer] Yes, sir.

Appellant argues that his statements from the fourth interview should have been suppressed because they were given after he had made an equivocal request for counsel. Appellant made statements about Adam's bruises which were conflicting with prior accounts he had given, and he admitted to spanking the child two days before his death. Appellant claims that the admission of these statements violated his rights against self-incrimination under the Fifth Amendment to the United States Constitution and Art. 1, § 11 of the Wyoming Constitution.

The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Article 1, § 11 of the Wyoming Constitution provides:

> No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

■ At the trial court, appellant challenged the interviews in the context of *Black v. State*, 820 P.2d 969 (Wyo.1991) (continued interrogation by police was coercive where pregnant suspect was emotionally distraught and police already had a case against her). Appellant has raised the question of an equivocal request for counsel for the first time on appeal. Therefore, we examine his claim for plain error. *Ramos v. State*, 806 P.2d 822, 827 (Wyo.1991). In order for plain error to be found, appellant must show that:

> (1) the record clearly shows what occurred at trial, (2) transgression of a clear and unequivocal rule of law, and (3) which adversely affected one of [appellant's] substantial rights. Failure to establish each element of this three-part test precludes a finding of plain error.

*Geiger v. State*, 859 P.2d 665, 668 (Wyo.1993) (citations omitted); *Ramos*, at 827.

■ Once a person makes a request for counsel, no further interrogation is allowed unless counsel has been made available or the person voluntarily chooses to communicate. *Best v. State*, 736 P.2d 739, 742 (Wyo. 1987) (*quoting Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 *reh'g denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981)). If the request for counsel is equivocal, however, the police can con-

tinue to talk with the person in order to "resolve the question of the suspect's desire for counsel." *Best,* at 743; *see also Cheatham v. State,* 719 P.2d 612, 619 (Wyo.1986). The police may not question the suspect on the offense until they determine whether he desires counsel or not. *Id.* If he does not, the police must obtain a voluntary written waiver for interrogation to continue. *Best,* at 743–44.

The purpose behind this rule is to protect a person's constitutional right against compelled self-incrimination. U.S. Const.Amend. V; Wyo. Const. Art. I, § 11; *Best,* at 742; *see also Edwards,* 451 U.S. at 482, 101 S.Ct. at 1883; *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh'g denied* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

Throughout the fourth interview, appellant repeatedly denied killing Adam. Even if we assumed that appellant was improperly questioned after requesting counsel, we fail to see how those statements rise to the level of plain error. Appellant did make inconsistent statements during the interview about how Adam received his injuries, however, the statements do not incriminate appellant in the sense that he admitted to the crime. To the contrary, he emphatically denied killing Adam throughout the interview.

In his brief, appellant provides no argument as to what effect, if any, the suppression of his statements would have had on the trial. There is abundant evidence in the record that appellant did in fact kill Adam. Thus even if we suppressed his statements, the outcome of appellant's trial would likely be the same. Consequently, no substantial right of appellant was adversely affected by the admission of the statements and there was no plain error.

## C. SUFFICIENCY OF THE EVIDENCE

▮▮▮ Appellant, in his final issue, questions the sufficiency of the evidence to sustain his second degree murder conviction. In reviewing sufficiency of the evidence claims we examine the evidence to determine whether all of the evidence presented is "adequate to support a reasonable infer-

ence of guilt beyond a reasonable doubt to be drawn by the finder of fact, viewing the evidence in the light most favorable to the state." * * * We do not substitute our judgment for that of the jury in applying this rule, and our only duty is to determine if a quorum of reasonable and rational individuals would, or even could, have come to the same result the jury actually did.

*Taul v. State,* 862 P.2d 649, 657 (Wyo.1993) (citations omitted) (*quoting Saldana v. State,* 846 P.2d 604, 619 (Wyo.1993)). In order to sustain appellant's conviction for second degree murder, the evidence must be sufficient to show that he killed Adam purposely and maliciously without premeditation. W.S. 6–2–104.

It is undisputed that Adam was beaten to death. There is evidence from eyewitnesses and from the autopsy of the extensive injuries that Adam suffered. There was evidence of the physical and emotional abuse that permeated appellant's relationship with Adam. The appellant had ample time and access to Adam on the night of his death. While this evidence is circumstantial, it was sufficient for a reasonable jury to conclude that appellant was guilty of second degree murder in the beating death of Adam Franklin.

### CONCLUSION

The prior bad acts evidence, which related to appellant's relationship with the victim, was admissible under W.R.E. 404(b) as tending to prove intent, identity and malice. The admission of appellant's statements from his fourth interview with the police did not rise to the level of plain error. Finally, there was sufficient evidence to sustain appellant's second degree murder conviction. Therefore, appellant's conviction and sentence are affirmed.