2006 WY 5

**Frederick MONROE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–105.**

Supreme Court of Wyoming.

Jan. 10, 2006.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Public Defender.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; David Delicath, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, VOIGT, BURKE, JJ., and SPANGLER, D.J., Retired.

BURKE, Justice.

[¶1]   Frederick Monroe was convicted of two counts of felony interference with a peace officer.  On appeal, Mr. Monroe challenges the denial of his motion to suppress statements made to law enforcement.  He also contends that his absence from a competency hearing deprived him of due process.  We affirm.

### ISSUES

[¶2]   Mr. Monroe presents two issues on appeal:

I.   Whether the district court erred in denying [his] motion to suppress his statement, violating his rights under the United States Constitution and Article 1, § 11 of the Wyoming Constitution.

II.   Whether [his] Fifth, Sixth and Fourteenth Amendment right to be present at every critical stage of the criminal proceedings against him was violated when he was not allowed to attend his own competency hearing.

### FACTS

[¶3]   At the time of the incident, Mr. Monroe was incarcerated in the Wyoming State Penitentiary.  Corporal Cleta Morrow was a correctional officer assigned to Mr. Monroe's unit.  On the afternoon of December 31, 2002, the inmates in the unit were locked in their cells to be counted.  After the count was completed, the inmates were released from their cells.  Mr. Monroe exited his cell and approached Corporal Morrow while she was standing at a podium doing paperwork.  She did not notice his approach.  Mr. Monroe made a derogatory and vulgar reference to Corporal Morrow and punched her in the head as she turned toward him.  The blow knocked Corporal Morrow to the ground.  Mr. Monroe kicked her.  Corporal Morrow defended herself and called for assistance.

[¶4]   Officer Knight was the first to respond.  He sprayed Mr. Monroe with pepper spray and blocked his access to Corporal Morrow while she exited the pod.  Mr. Monroe attempted to kick Officer Knight.  Sergeant Peach and Officer Moren entered the pod.  Corporal Morrow also reentered the pod to help secure it.  Mr. Monroe yelled at Sergeant Peach, referred to Corporal Morrow again in derogatory fashion and kicked Sergeant Peach.  Mr. Monroe was eventually subdued.  Corporal Morrow and Sergeant Peach were treated for their injuries at the local hospital.

[¶5]   Sergeant James Rosentreter of the Carbon County Sheriff's Office investigated the incident.  On January 7, 2003, he interviewed Mr. Monroe at the penitentiary.  Prior to asking Mr. Monroe any questions, Sergeant Rosentreter provided a Miranda warning to Mr. Monroe.  He then asked Mr. Monroe if he wanted to talk to him.  Mr. Monroe responded by saying, "Are you going to get me a good attorney?"  Sergeant Rosentreter replied, "In whose eyes?"  Mr. Monroe responded to that statement by providing Sergeant Rosentreter with information concerning the incident.  Sergeant Rosentreter asked follow-up questions to which Mr. Monroe provided additional information.  Subsequently, Mr. Monroe was charged with two counts of felony interference with a peace officer in violation of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2001).[1]

[¶6]   Mr. Monroe was arraigned on April 28, 2003, and entered a plea of "not guilty" to both counts.  On July 9, 2003, defense counsel filed a Motion for Evaluation to Determine Competency.  The motion sought an evaluation pursuant to Wyo. Stat. Ann. § 7–11–303(a) (LexisNexis 2001) in order to determine Mr. Monroe's fitness to proceed.  The district court granted the motion and entered an order suspending proceedings until Mr. Monroe's competency to proceed was determined.  The evaluation was conducted by Dr. Abram C. Hitt, a staff psychologist at the Wyoming State Hospital.  In early Sep-

---

1.   Wyo. Stat. Ann. § 6–5–204(b) provides:
    (b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

tember 2003, Dr. Hitt submitted his report in which he concluded that Mr. Monroe was competent to proceed with trial. On September 17, 2003, the district court entered a Notice of Setting scheduling a competency hearing for October 24, 2003.

[¶ 7] On October 24, 2003, defense counsel and counsel for the State appeared for the scheduled hearing. Mr. Monroe was not present because transportation arrangements from the penitentiary had not been made. Defense counsel advised the district court that she had no objection to the report and did not contest that Mr. Monroe was fit to proceed. Defense counsel also requested that the court end the suspension of further proceedings and set a trial date. The State advised that it had no objection to the report. The district court determined that Mr. Monroe was competent to proceed and scheduled the matter for trial.

[¶ 8] Shortly before trial, Mr. Monroe moved to suppress the statements that he made to Sergeant Rosentreter. He contended that he had invoked his right to counsel but Sergeant Rosentreter improperly continued to question him regarding the incident. After hearing, the district court denied the motion. A jury trial was held. Mr. Monroe asserted a defense of "automatism." Dr. Hitt did not testify and the contents of his report were not disclosed to the jury. Mr. Monroe was found guilty on both counts. This appeal followed.

### Motion to suppress

[¶ 9] Mr. Monroe asserts that the district court erred by denying his motion to suppress. He contends that his question, "Are you going to get me a good attorney?" was an unambiguous request for counsel which prevented further interrogation until he was provided an attorney. Alternatively, he contends that he made an ambiguous request for counsel which limited further interrogation to a clarification of his desire for counsel.

[¶ 10] In reviewing the denial of a motion to suppress, we apply the following standard of review:

"Findings of factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* [I]ssue[s] of law ... [are] reviewed *de novo. Id., Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997)."

*Jelle v. State*, 2005 WY 111, ¶ 13, 119 P.3d 403, 407 (Wyo.2005) (quoting *Mackrill v. State*, 2004 WY 129, ¶ 12, 100 P.3d 361, 364 (Wyo.2004)).

[¶ 11] The motion to suppress hearing was relatively limited in scope. Mr. Monroe contended that his remark, "Are you going to get me a good attorney?" was an unequivocal request for counsel which precluded further questioning pursuant to our decision in *Hadden v. State*, 2002 WY 41, ¶ 25, 42 P.3d 495, 504 (Wyo.2002). The State contended that Mr. Monroe's query did not rise to the level of an unequivocal request for counsel and that, based on *Hadden*, questioning regarding the incident was permissible. The parties agreed that Mr. Monroe was in custody at the time of the interrogation. Sergeant Rosentreter was the only witness. He testified as follows:

Q. Did you introduce yourself to Mr. Monroe?

A. Yes, I did.

Q. Did you tell him what you wanted to speak to him about?

A. Yes, I did.

Q. Did you advise him of his rights under Miranda?

A. Yes, I did.

Q. How did you do that?

A. I read it off of a card.

Q. Do you have that card with you?

A. Yes, I do.

Q. Would you state to the Court how you read that advisement?

A. Do you want me to read it?

Q. Exactly as you would have done it that day, to the best of your ability[.]

A. Mr. Monroe, you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements.

And then I asked him, do you understand these rights that I've explained to you? Having those rights in mind, do you wish to talk to me now?

Q. How did Mr. Monroe respond?

A. He asked me if I was going to get him a good attorney.

Q. Did you take that as a request for an attorney?

A. No.

Q. What [did] you say in response to him?

A. He asked if [I] was going to get him a good attorney. I said, in whose eyes? Then Mr. Monroe went on to tell me what had happened.

Q. Specifically, what's the first thing, as you remember, after you said good attorney, in whose eyes?

A. His next statement was, I try to mind my own business out here.

Q. And did he say anything before you responded to him?

A. I don't understand.

Q. Did he make any other statements before you said something?

A. Yes.

Q. What's the next thing he said[?]

A. That—Let's see. He said, I try to mind my own business out here. I believe his next statement was, if it wasn't for her, I would still be in C Unit. I don't remember, I would have to read my report to say exactly how it went.

Q. Did you prepare a report contemporaneous with this interview?

A. Yes, I did.

Q. Would it refresh your recollection to take a look at that report?

A. Yes, it would.

. . .

Q. Deputy Rosentreter, I'm showing you a copy of your sheriff's office report.

A. Yes, sir.

Q. Would you take a look at that real quickly. Does that refresh your recollection of the next thing that Mr. Monroe said to you?

A. Yes. He did say, "I'm doing my best to mind my own business out here. Everyone in C2 knows about this officer and the way she is."

Q. Did you respond to that statement?

A. No, I didn't.

Q. What did he say next?

A. "She has mood swings, you know, unless it's about time for her to get off work. The 2:00 count, my roommate says, here she comes, looks like she was in a race. I wanted out and she slammed the door and I got fed up with it and I totally lost it."

Q. Did you say anything at that point?

A. No.

Q. What was the next thing that was said?

A. It continues on, "I did what I did and that was it."

[¶ 12] After Mr. Monroe made these initial statements, Sergeant Rosentreter followed up with only three questions regarding the incident. He asked Mr. Monroe, "what he did" and "what happened." He also asked Mr. Monroe if he received "any marks in the incident." Mr. Monroe responded to the questions by providing additional information regarding the incident. According to Sergeant Rosentreter, Mr. Monroe had clear speech during the interview and did not appear to be confused in any way.

[¶ 13] The district court took the matter under advisement and subsequently issued a decision letter. The district court found that Mr. Monroe had not unequivocally invoked

his right to counsel and, based upon our decision in *Hadden*, denied the Motion to Suppress. The district court explained its reasoning as follows:

> The parties concede that Defendant was "in custody" and was subject to "interrogation" by Sgt. Rosentreter. Appropriately, the parties have narrowed the pertinent issue to one of whether, by asking whether Sgt. Rosentreter would get Defendant a "good attorney," Defendant was invoking his right to counsel, mandating a halt to further questioning. If Defendant did not invoke his right to counsel, the parties concede that questioning was able to continue and that Defendant voluntarily waived his rights and answered the questions of him.

Both parties cite to *Hadden v. State*, 2002 WY 41, 42 P.3d 495 (Wyo.2002) in which the Wyoming Supreme Court stated:

> To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect **might** want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

*Davis v. United States*, 512 U.S. 452, 462, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (emphasis in original).

In *Davis*, the defendant was given *Miranda* warnings, and then he waived his right to remain silent and to consult with an attorney prior to questioning. During his interview, Davis said, "Maybe I should talk to a lawyer." Davis was told that he had a right to an attorney but then responded that he did not want an attorney. Later in the interview, he said, "I think I want a lawyer before I say anything else." At that point, the interview ceased. *Id.*, 512

U.S. at 454, [114 S.Ct. 2350]. The Supreme Court's reasoning continued:

> The *Edwards* rule-questioning must cease if the suspect asks for a lawyer-provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that **might** be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.

*Id.*, 512 U.S at 461 [114 S.Ct. 2350] (emphasis in original).

The Supreme Court concluded its analysis stating that the courts below found that Davis's remark—"Maybe I should talk to a lawyer"—was not a request for counsel, and it found no reason to disturb this conclusion. *Davis*, 512 U.S at 462, 114 S.Ct. 2350. The Tenth Circuit Court of Appeals has applied that rule in similar circumstances. *United States v. Zamora*, 222 F.3d 756, 766 (10th Cir.2000) (Zamora's statement that he "might want to talk to a lawyer" was ambiguous, as Zamora appeared to be thinking out loud, and questioning was not required to cease).

We adopt the rule espoused by *Davis* and *Zamora*. In doing so, we have consulted with the views of our brethren in many jurisdictions and find them to be in agreement with the rule as well. *State v. Simmons*, 2000 MT 329 [¶¶] 19–24 [303 Mont. 60] 15 P.3d 408, [¶¶] 19–24 (Mont. 2000) (although defendant at first indicated he wanted an attorney, he then said, "I do not want an attorney present just for this part, no"—and answered

questions asked of him); *Harte v. State,* [116 Nev. 1054] 13 P.3d 420, 428–29 (Nev.2000) (During the course of his interview, Harte said, "Just out of curiosity, when do I get to talk to a lawyer?"; "I ... they ... they told me, you know, that they thought I should talk to a lawyer whatever"; "I don't wanna be a bitch and say, you know, give my [sic] lawyer. But I mean;" and, "What do you think a lawyer would tell me right now?"; however, in full context of his interview and clarity of *Miranda* warnings given, those statements were ambiguous); *People v. Tally,* 7 P.3d 172, 179–81 (Colo.App.1999) (Although the defendant asked many questions about his right to counsel, he ended up saying, "Yeah, I'll talk to you."); *State v. Whipple,* 134 Idaho 498, 5 P.3d 478, 482 (Idaho App.2000) (adopting *Davis* rule, but in context of right to remain silent where defendant repeatedly said, "No more!" to questions being put to him); *Stemple v. State,* 2000 OK CR 4 ¶¶ 9–10, 994 P.2d 61, ¶¶ 19–24 (Okla.[Crim.App.]2000) ("I feel as though I should have an attorney," was equivocal response); *State v. Kiriluk,* 1999 UT App 30 ¶¶ 7–8, 975 P.2d 469, ¶¶ 7–8 (Utah App.1999), (defendant's response of "I don't," when asked if he had anything to say about evidence found in his apartment not unambiguous request for counsel or to remain silent); *State v. Donesay,* [265 Kan. 60] 959 P.2d 862, 871 (Kan. 1998) (adopting rule in context of right to remain silent); *Braboy v. State,* 130 Md. App. 220, 745 A.2d 471, 477–79 (2000) ("I want a lawyer but I can't afford a lawyer," not an unambiguous exercise of right to counsel where defendant decided to talk after he was informed that a lawyer would be appointed for him if he could not afford one); *Goodner v. State,* 714 N.E.2d 638, 641 (Ind.1999) (Goodner equivocated about whether or not he should talk without a lawyer, but ultimately signed written waiver and talked); *State v. Brown,* 589 N.W.2d 69, 72–74 (Iowa App.1998) (defendant's statement, "Is my lawyer here?" not an unambiguous request for counsel); *State v. Greybull,* 1998 ND 102 ¶¶ 8–9, 14–21, 579 N.W.2d 161, ¶¶ 8–9, 14–21 (N.D. 1998) (defendant's statements, "You can't make me say nothing," "Do I have to get a lawyer?" and "Do I need to get a lawyer?"—ambiguous under *Davis*); *Cothren v. State,* 705 So.2d 849, 851–55 (Ala.Crim.App.1997) ("I think I want to talk to an attorney before I answer that," ambiguous under circumstances of case); but *see Billups v. State,* 135 Md. App. 345, 762 A.2d 609, 614–16 (2000) (defendant signed signature line on form which purported to waive his rights to remain silent and have counsel, but wrote "NO" by his signature—construed to be unequivocal exercise of right to remain silent and have an attorney).

*Hadden,* ¶¶ 22–25.

Applying *Hadden* to the facts of the present case, this Court finds that Defendant did not unambiguously exercise his right to counsel. Given the context of Defendant's interview with Sgt. Rosentreter and the clarity of the *Miranda* warnings read to Defendant, Defendant did not request counsel simply by asking Sgt. Rosentreter if he would get him a "good attorney." Not only were Defendant's follow up statements initially completely voluntary on his part (*e.g.* Sgt. Rosentreter only responded by asking "Good in whose eyes?"), but continued questioning was permitted under the guidance of *Hadden.* Accordingly, Defendant knowingly and voluntarily waived his right to counsel with respect to the custodial interrogation.

[¶ 14] The district court concluded that the phrase, "Are you going to get me a good attorney?" was not an unequivocal request for counsel under the circumstances. We agree. The phrase could be viewed as preliminary in nature, seeking information which might be useful to Mr. Monroe in determining whether he would exercise his right to counsel. The query could be viewed as rhetorical, one to which Mr. Monroe did not expect a reply. It could be viewed as a derisive comment by Mr. Monroe suggesting his opinion of prospective counsel. No doubt, there are other possible interpreta-

tions of the phrase, including the one argued by Mr. Monroe on appeal.

[¶ 15] Additionally, and perhaps more significantly, we afford deference to the finding of the district court because when we examine "the cold words of the transcript of testimony, we do not have the benefit of how the trial judge sees and hears the witness— the pitch of the voice, facial changes, the movement in the witness—all of which may tell a separate story, to be given credence." *Martinez v. State*, 611 P.2d 831, 839 (Wyo. 1980) (quoting *Madrid v. Norton*, 596 P.2d 1108, 1117 (Wyo.1979)). The district court was able to observe Sergeant Rosentreter testify, hear the inflection and intonation of his voice, and understand how Mr. Monroe delivered the phrase. Sergeant Rosentreter did not express any doubt regarding whether Mr. Monroe had intended to request an attorney, and the district court was in the best position to assess his credibility. We conclude that the district court's finding that Mr. Monroe had not unequivocally invoked his right to counsel was not clearly erroneous.

[¶ 16] Mr. Monroe also contends that even if his request was equivocal, it was sufficient to prevent further questioning regarding the incident absent a signed written waiver of his *Miranda* rights. He relies upon our decision in *Suliber v. State*, 866 P.2d 85 (Wyo.1993) in support of his position. In *Suliber*, we held that police questioning following an equivocal request for counsel was limited to clarification of the request, and that further interrogation was only permissible after procuring a written waiver of that right. *Id.* at 90–91.

[¶ 17] We decided *Suliber* in 1993 and, in support of our decision, relied heavily upon the holding of the United States Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). Subsequently in 1994, the United States Supreme Court refined the contours of *Edwards* with its decision in *Davis* in which it held that only an unequivocal request for counsel mandates a halt to interrogation. *Davis v. United States*, 512 U.S. 452, 462, 114 S.Ct. 2350, 2357, 129 L.Ed.2d 362 (1994). We accepted this refinement when

we adopted the *Davis* rationale. *Hadden*, ¶ 25. Our extensive review in *Hadden* of other cases regarding equivocal requests for counsel, together with our express adoption of *Davis*, reflects our intention to abandon prior, inconsistent approaches. We stated:

> The list of cases cited above is by no means exhaustive, and we concede that there are cases to the contrary. *See, e.g.*, *State v. Jones*, 102 Wash.App. 89, 6 P.3d 58, 61–62 (2000) (Washington declined to adopt *Davis* rule); and *State v. Rogan*, 91 Hawai'i 405, 984 P.2d 1231, 1249 (Hawai'i 1999) (according broader rights under Hawai'i Constitution). However, we find the *Davis* decision and its progeny convincing, and we adopt that rule for Wyoming.

*Hadden*, ¶ 26. To the extent that *Suliber* conflicts with our decision in *Hadden*, it was overruled *sub silentio*. We find no error in the district court's denial of the motion to suppress.

### *Right to be present at competency hearing*

[¶ 18] Mr. Monroe asserts that he was deprived of his constitutional right to be present at the competency hearing. "The Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution guarantee an accused the right to be present during every stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Skinner v. State*, 2001 WY 102, ¶ 20, 33 P.3d 758, 765 (Wyo.2001). The question of whether a defendant has the right to be present at a specific phase of the criminal proceeding is an issue of law which we review *de novo*. *Id.*, ¶ 19.

[¶ 19] The district court granted Mr. Monroe's motion for an evaluation. Dr. Abram Hitt, staff psychologist for the State Hospital, conducted the evaluation and prepared a forensic report in which he concluded:

> [I]t can be stated with a reasonable degree of psychological certainty that Mr. Monroe has the basic capacity to comprehend his position, understand the nature and object of the proceedings against him, conduct his defense in a rational manner and cooperate

with his counsel to the end that a defense may be interposed in his behalf. It is further concluded that the defendant can retain his basic capacity to proceed through the adjudicative process in the foreseeable future.

[¶ 20] A competency hearing was scheduled. Mr. Monroe was not present because arrangements had not been made to transport him to the hearing. Defense counsel did not seek a continuance. Instead, defense counsel requested entry of a finding of competency to proceed based upon Dr. Hitt's report. The transcript reflects the following:

> The Court: [Defense counsel] is present representing the Defendant, [Prosecutor] is present representing the State, Mr. Monroe is not present. I believe arrangements weren't made to have him transported from the penitentiary.
>
> But really, the only matter before the Court, the proceedings were stayed pending evaluation at the state hospital on his fitness to proceed. The report indicates a finding that he is fit to proceed.
>
> And pursuant to the Statute, 7–11–303, "If neither the State, nor the accused or his counsel contests the opinion referred to ... relative to fitness to proceed, the Court may make a determination and finding of record on this issue on the basis of the report filed or the Court may hold a hearing on its own motion."
>
> Does the Defense wish that the Court make a finding of record on this issue on the basis of the report filed?
>
> [Defense counsel]: Yes, Your Honor, that's correct. For the record, since I have become counsel of record for the case, I have met with my client twice. The first meeting was a very lengthy type meeting. I have reviewed the state hospital evaluation with him. In fact, I read it to him and explained things word for word. So we did go through that very carefully.

> Based on the findings of the report and based on my interactions with my client, I do not contest the findings of the state hospital report. We would ask the Court at this time that we be able to unsuspend proceedings so we're able to set a trial date and get things rolling again in this case, Your Honor.
>
> The Court: Thank you.
>
> [Prosecutor]: Your Honor, the State also stipulates to the findings in the report, and would ask that the Court enter the appropriate order.
>
> The Court: All right. The Court has reviewed the report. And based on the reading of the statute that allows the Court to make a finding if neither the accused nor his counsel contests the opinion referred to, will rule on this. But I will rule that he is fit to proceed as stated in the report and set the matter for further proceedings. Anything further on State versus Monroe?
>
> [Prosecutor]: Not from [the] State, Your Honor.
>
> The Court: Okay.

[¶ 21] Pursuant to Wyo. Stat. Ann. § 7–11–303(f) (LexisNexis 2001), a hearing is required only "[i]f the opinion relative to fitness to proceed is contested." [2] Dr. Hitt's opinion was not contested and supported a finding that Mr. Monroe was competent to proceed. Based upon the contents of the report and the lack of objection to the report, the district court was authorized to enter a finding of competency to proceed without holding a hearing. Because no actual hearing took place, Mr. Monroe's right to attend did not arise. We find no error in the procedure utilized by the court or in its determination that Mr. Monroe was fit to proceed.[3]

[¶ 22] Affirmed.

---

2. Wyo. Stat. Ann. § 7–11–303(f) (LexisNexis 2001) states:

> If neither the state, nor the accused or his counsel contests the opinion referred to in paragraph (c)(iii) of this section relative to fitness to proceed, the court may make a determination and finding of record on this issue on the basis of the report filed or the court may hold a hearing on its own motion. If the opinion relative to fitness to proceed is contested the court shall hold a hearing on the issue....

3. Mr. Monroe does not contest the finding that he was fit to proceed.